618 F.2d 677
 80-1 USTC P 9327
 Robert PARKS, Dillon Gaulding, and National Treasury
Employees Union, on behalf of themselves and all
others of their class similarly
situated, Plaintiffs- Appellants,
v.
UNITED STATES INTERNAL REVENUE SERVICE, Wichita District,
Maurice Johnson, Robert Edmiston, and the United
States of America, Defendants-Appellees.
 No. 78-1518.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 25, 1980.
Decided March 27, 1980.
 
 William F. White, Associate Gen. Counsel, National Treasury Employees Union, Washington, D. C. (Robert M. Tobias, Gen. Counsel, National Treasury Employees Union, Washington, D. C., and Regan & McGannon, Wichita, Kan. (of counsel), with him on brief), for plaintiffs-appellants.
 Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Thomas M. Walsh, Attys., Tax Div., Dept. of Justice, Washington, D. C., and James P. Buchele, U. S. Atty., Topeka, Kan. (of counsel), with him on brief), for defendants-appellees.
 Before DOYLE, BREITENSTEIN and McKAY, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The basic question in this case is whether the plaintiffs, who are employees of the Internal Revenue Service, can maintain a civil action growing out of the use by the Wichita office of the Internal Revenue Service of personnel files of employees who had not pledged to purchase government bonds, whereby these employees were pinpointed for a telephone campaign making use of a list of such "recalcitrants," and, if so, what the nature of the remedy is. The case is one of first impression. The trial court ruled that no remedy existed under the Privacy Act of 1974. We disagree and reverse.
 
 
 2
 This action was instituted on June 29, 1978, in the United States District Court for the District of Kansas. It was alleged that it arose under the Privacy Act of 1974 and that the court had jurisdiction pursuant to 5 U.S.C. § 552a(g)(1)(D), 28 U.S.C. §§ 1331(a) and 1361. The plaintiffs, Parks and Gaulding, are employees of the Internal Revenue Service in Wichita, Kansas. An additional plaintiff in the trial court was the National Treasury Employees' Union, the members of which are employed by the United States Department of the Treasury. The Union alleged that it had an interest in upholding the rights of Treasury Department employees in legal contract and personnel actions.
 
 
 3
 The complaint further alleged that the Privacy Act prohibits disclosure of " * * * any record which is contained in a system of records by any means of communication to any person except pursuant to a written request by, or prior written consent of, the individual to whom the record pertains," unless the officers and employees of the agency which maintains the record have need for it in the performance of their duties or if the record is disclosed for routine use. 5 U.S.C. § 552a(b)(1) and (3).
 
 
 4
 The disclosures complained of occurred when nonsupervisory personnel of the Internal Revenue Service called the plaintiffs Parks and Gaulding for the purpose of soliciting their purchase of U.S. Savings Bonds. The persons calling, upon being questioned, said that lists of IRS employees who had not participated in the purchase of U.S. Savings Bonds were supplied for the purpose of telephone calls. The senior member of management, defendant Maurice Johnson, stated that he knew of the lists and condoned their use for the purpose of encouraging participation in the bond program. It was also alleged that the use for the purpose described above was not a routine use of the files; that disclosures were made to inappropriate users for other than officially designated purposes, and that the information was not needed by agency officials and employees in the regular performance of their work.
 
 
 5
 Plaintiffs sought damages based upon alleged psychological damage or harm from the unauthorized and illegal disclosures. They prayed for the award of a minimum of $1,000 damages together with attorney's fees in accordance with 5 U.S.C. § 552a(g)(4). Also sought was injunctive relief. The defendants moved to dismiss and the district court granted this motion.
 
 
 6
 The district court also ruled that it lacked subject matter jurisdiction over the Union because the Privacy Act precludes suits by anyone other than "individuals" as that term is defined in 5 U.S.C. § 552a(a)(2), and, second, because the Union had failed to allege actual harm to itself and therefore lacked standing to sue under Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).
 
 
 7
 The judge ruled, in addition, that there was a lack of subject matter jurisdiction over the individual defendants Johnson and Edmiston, because the Privacy Act only authorized suits against agencies as defined in 5 U.S.C. §§ 552a(a)(1) and 552(e). The judge's final point was that the amended complaint failed to state a claim under the Privacy Act, because the IRS' use of the information from the personnel files was an intra-agency "routine use" within the definition of 5 U.S.C. § 552a(a)(7). Accordingly, the judge ruled that the defendants had not violated the Act. In addition, the judge ruled that the plaintiffs had failed to allege sufficiently that they had suffered an adverse effect or injury-in-fact from disclosures. The district court did not address itself specifically to the plaintiffs' claim for damages as distinguished from the plaintiffs' claim for injunctive relief. Nor did the judge consider the alternative grounds advanced by plaintiffs in support of the claim for injunctive relief, 28 U.S.C. §§ 1331(a) and 1361.
 
 
 8
 The plaintiffs seek reversal on a number of grounds, which we summarize as follows:
 
 
 9
 The plaintiffs contend that they have stated a claim for relief under the Privacy Act under two substantive provisions of the Act, first, under 5 U.S.C. § 552a(b)(1), and second, 5 U.S.C. § 552a(b)(3). They also say that the invasion which caused psychological harm was adequate to constitute an adverse effect or an injury-in-fact. The plaintiffs argue further that injunctive relief should be available to them under 28 U.S.C. §§ 1331(a) or 1361. Finally, the plaintiffs contend that the Union and the individual defendants Johnson and Edmiston were proper parties to the lawsuit.
 
 
 10
 The defendants argue that the complaint is insufficient because the injunctive relief sought is unavailable under the Privacy Act. They say, in addition, that the plaintiffs' allegations are inadequate for failure to allege the element of willfulness or intent necessary for monetary relief.
 
 
 11
 The plaintiffs take issue with all of the defendant's contentions in their reply brief.
 
 
 12
 Does the complaint state a claim under the Privacy Act? Our conclusion is that the allegations are sufficient to demonstrate a violation of that part of the Act which defines a remedy against the offending agency for money damages.
 
 
 13
 The applicable provisions are subsections (1) and (3) of 5 U.S.C. § 552a(b). Subsection (1) sets up the prohibition against disclosure in unmistakable terms:
 
 
 14
 (b) Conditions of disclosure. No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be
 
 
 15
 (1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties; . . .
 
 
 16
 There is a specific allegation in the amended complaint that:21. Disclosure of savings bond information was not needed by agency officials and employees in the regular performance of their work.
 
 
 17
 The trial court did not consider this particular remedy averred by the plaintiffs in their complaint, that is, the prohibition against disclosure together with the exceptions, one of which is that the agency employees had need of the record in the regular performance of their duties. While the district court failed to address this element of the plaintiffs' claim, it did give a general rejection. If the plaintiffs have stated a claim pursuant to § 552a(b)(1),[1] they are entitled to have their case tried.
 
 
 18
 It cannot be gainsaid that Congress expressly held out nonparticipation in savings bond programs as an example of information not needed in the performance of federal employees' regular duties. We do not say that this does not prevent the defendants from arguing to the contrary that disclosure of savings bond information was necessary to the performance of their duties. The defendants rely on Executive Order No. 11532, 35 Fed.Reg. 8629 (June 4, 1970). This Executive Order was signed by President Richard Nixon on June 2, 1970. It established an Interdepartmental Committee for the Voluntary Payroll Savings Plan for the Purchase of United States Savings Bonds. This consisted of the heads of all federal executive-branch agencies. The order charged the committee to formulate a plan of organization and sales promotion of the savings bond program. Even though this may have been a worthy effort, it does not justify the use of information derived from the personnel files of employees, particularly in view of the subsequent passage of the Privacy Act. In short, the order, which was at odds with the stated legislative purpose of the Privacy Act, does not license the defendants to violate the Privacy Act, and it would not be a ground for justifying the dismissal of plaintiffs' complaint.
 
 
 19
 The defendants also maintain that the use here was a routine one within the meaning of 5 U.S.C. § 552a(b)(3), which prohibits an agency from disclosing a record which is contained in a system of records except pursuant to written request by, or with the written consent of, the individual to whom the record pertains unless the disclosure of the record would be for a routine use. Plaintiffs have alleged that the use of personnel records for the purpose of soliciting the purchase of savings bonds is not a routine one.
 
 
 20
 Section 552a(e) of 5 U.S.C. establishes notice-and-comment rulemaking procedures for determining what constitutes a routine use of information from agency record systems. In order for agency information to qualify for the routine use exemption, each agency must publish annually in the Federal Register a notice of the existence and character of the agency's system of records, which is to include each routine use of the records contained in the system together with the categories of users and the purpose of such use. A further provision in the Act is that at least 30 days prior to this annual notice, a notice of any new use or intended use of the information must be published in the Federal Register and the agency must provide an opportunity for interested persons to submit written data, views, or arguments. Thus, Congress intended that each agency describe in advance of disclosure the uses of information that it considers routine. While the courts may consider whether the agency acted arbitrarily and capriciously in designating certain uses as routine, it is the agency and not the court which makes this determination at first.
 
 
 21
 What the foregoing leads up to is that the savings bond information has not been designated by the IRS as a routine use in accordance with § 552a(e). The Department of the Treasury did publish a notice in the Federal Register on December 2, 1975, describing the "routine uses" of information from personnel files. See 40 Fed.Reg. 56017, 59096-97 (December 2, 1975). But the routine uses enumerated in this notice failed to include disclosure of information concerning nonparticipation in the voluntary savings bond program for the purpose of soliciting savings bond sales.
 
 
 22
 As appears above, the express prohibition of disclosure of records contained in § 552a(b)(1) and (3) is clear, and the complaint unquestionably alleges a violation of these subsections.
 
 
 23
 Are remedy elements adequately alleged? The remedy provision, § 552a(g)(1), is as follows:
 
 
 24
 (g)(1) Civil remedies. Whenever any agency
 
 
 25
 (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
 
 
 26
 the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.
 
 
 27
 The effect of subsection (g)(1) is that when any agency fails to comply with any other provision of this section or any rule promulgated thereunder in such a way as to have an adverse effect on an individual, that individual may bring a civil action in the United States courts. The allegation in the complaint is that the nonparticipation by plaintiffs in the savings bond sales program was disclosed so as to pressure the plaintiffs.
 
 
 28
 The next element is whether this had an adverse effect on the plaintiffs. If true, it subjected the plaintiffs to unconsented-to exposure and to special pressure looking to their purchase of the bonds. Although the Privacy Act is silent on what constitutes an adverse effect within the statute, 5 U.S.C. § 552a(g)(1)(D), the phrase "adverse effect" derives from the remedial section of the House bill, H.R. 16373, 93d Cong., 2d Sess. (1974), which states that:
 
 
 29
 (A)n action will lie for the failure of the agency to comply with any other section of this law when such non-compliance has an adverse effect upon the aggrieved individual.
 
 
 30
 H.Rep. No. 93-1416, 93d Cong., 2d Sess. 17 (1974). The remedial section of the Senate bill, S.3418, 93d Cong., 2d Sess. (1974), granted a cause of action to any "aggrieved person."[2] The Senate Report considered the remedial provision of the Act to be a main enforcement mechanism. Plaintiffs have alleged that they were the victims of illegal disclosure. They have alleged that this effect was adverse in that they have suffered psychological harm.
 
 
 31
 It appears from the Act that Congress was borrowing from the common law tort of invasion of privacy. These are personal wrongs which result in injury to the plaintiffs' feelings and are actionable even though the plaintiff suffered no pecuniary loss nor physical harm. It is the invasion of the right that is the essence of the action. See 62 Am.Jur.2d Privacy § 45 (1972). Thus, mental distress or embarrassment would be a natural and probable consequence of such an invasion.
 
 
 32
 The trial court concluded that there was a lack of subject matter jurisdiction alleged; that the plaintiffs had not demonstrated that they had standing to sue. However, neither Warth v. Seldin, supra, nor Sierra Club v. Morton, supra, have any application. The plaintiffs are the objects or the subjects of the disclosure and the allegation is that they suffered a personal invasion. Therefore, there is no problem of lack of standing. The complaint sufficiently states a claim for relief.
 
 
 33
 Do the plaintiffs' allegations satisfy the damages remedy provision of the Privacy Act?
 
 
 34
 Under 5 U.S.C. § 552a(g)(4), the United States has consented to be sued by persons whose right to privacy has been invaded through disclosure of personnel records without their consent and which have resulted in adverse effect upon them. First, the plaintiffs have alleged that disclosure of the bond information was not needed by agency officials and employees in the regular performance of their work. Second, the Act, subsection (4) of § 552a(g), states that where the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of the actual damages sustained as a result of the refusal or failure and continues "but in no case shall a person entitled to recovery receive less than the sum of $1,000; and the costs of the action together with reasonable attorney fees as determined by the court."
 
 
 35
 Defendants say that the above remedy provision is not satisfied; that the plaintiffs have failed to allege intentional or willful misconduct by the IRS. However, the allegations made are that the information was published by defendants. Indeed, the individual defendants admitted that the lists were furnished to IRS management and to nonsupervisory employees for the purpose of contacting the plaintiffs. Plaintiffs further allege that defendant Johnson knew of the lists and condoned their use for soliciting bond sales. These allegations certainly serve generally to fill in the gaps on the question of willfulness and intentional misconduct in that they show that the plaintiffs are not relying on negligent acts. Thus, assuming that the failure to specifically allege intentional or willful misconduct should not preclude the plaintiffs from proving it, the trial court should allow the plaintiffs to amend the amended complaint in this particular case. It does not appear that premeditated malice is required.
 
 
 36
 It is noteworthy that the legislative history stated:
 
 
 37
 In a suit for damages, the (compromise) amendment reflects a belief that a finding of willful, arbitrary or capricious action is too harsh a standard of proof for an individual to exercise the rights granted by this legislation. Thus the standard for recovery of damages was reduced to "willful or intentional" action by an agency. On a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct, this standard is viewed as only somewhat greater than gross negligence.
 
 
 38
 Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, reprinted in 120 Cong.Rec. 40405, 40406 (1974).
 
 
 39
 Are the plaintiffs entitled to injunctive relief? We conclude that they are not.
 
 
 40
 The amended complaint sought an injunction to prevent the IRS from further practicing the disclosure of savings bond information and to require the IRS to recover and destroy the previously prepared lists. The district court did not address the question whether injunctive relief was available, and since the district court did dismiss the action, we deem it appropriate to comment on this aspect.
 
 
 41
 Our conclusion is that the plaintiffs are not entitled to injunctive relief under the Privacy Act. Section 552a(g) authorizes the court to issue injunctions in only two instances: first, to amend the individual's record, see 5 U.S.C. § 552a(g)(2)(A); second, to order an agency to produce agency records improperly withheld from an individual, see 5 U.S.C. § 552a(g)(3)(A). But the Act fails to authorize injunctive relief against violating the Act in other ways. Moreover, the legislative history evidences an intent to preclude the availability of injunctive relief in all cases. See Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, reprinted in, 120 Cong.Rec. 40405, 40406 (1974). A relevant principle of construction is that where, as here, the statute provides for certain special types of equitable relief but not others, it is not proper to imply a broad right to injunctive relief. Cell Associates v. National Institutes of Health, 579 F.2d 1155, 1161-62 (9th Cir. 1978).
 
 
 42
 It is further argued by the plaintiffs that injunctive relief should be available under 28 U.S.C. § 1331(a) (the federal-question jurisdictional provision of the Judicial Code). This is not a remedial provision and hence it cannot be employed to supplement the Privacy Act. This action arises under the Privacy Act and hence plaintiffs are limited to the express remedies provided by the Act. Nor does § 1361 of 28 U.S.C. apply. That section provides that the district court shall have original jurisdiction of any action in the nature of mandamus to compel the officer or employee or any agency to perform a duty owed to the plaintiff. But, the plaintiffs have sought a prohibitory or preventive order, not a mandatory one. See Schulke v. United States, 544 F.2d 453, 455 (10th Cir. 1976); Lovallo v. Froehlke, 468 F.2d 340, 343 (2d Cir. 1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). See also Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10th Cir.), cert. denied, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966). Mandamus is not the proper remedy here, and it fails to fill the requirements.
 
 
 43
 Are the defendants Johnson and Edmiston proper parties to this suit? We hold that they are not.
 
 
 44
 The district court ruled them out as being improper parties to a private civil action under the Privacy Act, (5 U.S.C. § 552a(g)(1), which authorizes a suit against an agency only. The term "agency" is defined in § 552a(a)(1), and so defined it excludes individual officers or employees. Plaintiffs also seek an injunction against these two individual defendants under 28 U.S.C. § 1331(a) and § 1361, but the injunctive relief is not available.
 
 
 45
 We conclude, therefore, that the trial court was correct in dismissing the case against these individuals.
 
 
 46
 Does the National Treasury Employees Union (N.T.E.U.) lack standing to sue under the Privacy Act for damages to its members?
 
 
 47
 The trial court held that it had no standing to sue either on its own behalf or in a representative capacity. The result of the court's ruling is correct. The Union is beyond the scope of the Act. Section 552a(g)(1) allows civil actions to be brought only by individuals. Cf. Dresser Industries, Inc. v. United States, 596 F.2d 1231, 1237-38 (5th Cir. 1979), cert. denied, --- U.S. ----, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980). Dresser Industries holds that corporations have no standing to maintain an action under the Privacy Act.
 
 
 48
 There is authority, however, for recognition of this procedure in a case in which the requisites for associational standing set forth in Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) are met. There are other difficulties, however. Each of the plaintiffs would have to testify because the actionable injury and the damages are individual. They are not common to nor shared by all of the Union members. Warth v. Seldin, 422 U.S. 490, 515-16, 95 S.Ct. 2197, 2213-14, 45 L.Ed.2d 343 (1975). Therefore, we must conclude that the Union lacks standing to maintain an action in a representative capacity for damages suffered by its individual members. The district court indicated that the N.T.E.U. might have standing to sue for injunctive relief. However, consistent with our conclusion that injunctive relief would not be available, the Union is excluded on this ground also.
 
 
 49
 In conclusion : In construing the subject Act, we are mindful of the Congressional purposes in enacting the measure, first, to have a self-help enforcement program. Such a system encourages the filing of lawsuits, for it is only through this process that the objects of the Act can be realized. Secondly, the right which the Act seeks to protect is a very sensitive one, that is, the right of an individual to be free of unnecessary invasions of his privacy. The Act seeks to prevent rummaging through his personnel file in a search for information which will advance objectives that are not incident to the mission of the agency. So, therefore, the product of the Congressional effort is to be treated in the spirit which attended its enactment. The individual plaintiffs here have alleged viable claims for damages pursuant to 5 U.S.C. § 552a(g) which are sufficient to withstand the motion to dismiss.
 
 
 50
 Accordingly, the judgment of the district court is reversed insofar as it denied the sufficiency of the violations by employees and officers of the agency. The judgment is affirmed in other respects. The cause is remanded for further proceedings consistent with the views expressed herein.
 
 
 
 [1]
 The purpose of this subsection is described in legislative history, but particularly, the Senate Report on the parallel provision contained in the Senate Bill, S. 3418, 93d Cong., 2d Sess. (1974), which declares that:
 This section is designed to prevent the office gossip, interoffice and interbureau leaks of information about persons of interest in the agency or community, or such actions as the publicizing of information of a sensational or salacious nature or of that detrimental to character or reputation.
 This would cover such activities as reading results of psychological tests, reporting personal disclosures contained in personnel and medical records, including questionnaires containing personal financial data filed under the ethical conduct programs of the agency.
 It is designed to halt the internal blacklisting that frequently goes on in agencies and on Federal installations on persons who do not comply with the organizational norms and standards for some reason, such as not participating in savings bonds drives or charity campaigns; and the listing of results of employee tests or performances.
 S.Rep. No. 93-1183, 93d Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Admin.News, pp. 6916, 6966 (emphasis added).
 
 
 [2]
 (T)he grant of a cause of action to any "aggrieved person" is designed to encourage the widest possible citizen enforcement through the judicial process. This is necessary, as mentioned, since the Act does not give the administrative body authority to ensure compliance with the Act. The Committee intends the use of the term "aggrieved person" to afford the widest possible standing consistent with the constitutional requirement of "case or controversy" in Article III, Sec. 2 of the Constitution. In this respect, the provision is designed, among other things, to supply certain deficiencies in standing and ripeness which the courts found in the Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), and (California Bankers Ass'n v. Shultz, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974))
 S.Rep. No. 93-1183, 93d Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Admin.News, 6916, 6997.