Maximo HERNANDEZ, Jr.,
Plaintiff-Appellant,

v.

Clifford ALEXANDER, Jr., Secretary of the Department of the Army, Defendant-Appellee.

No. 79–1883.

United States Court of Appeals, Tenth Circuit.

Submitted April 10, 1980.
Decided Feb. 19, 1982.

that his mother and brothers did not own any part of the gambling business. (II R. 212).

Maximo Hernandez, Jr., plaintiff-appellant, pro se.

R. E. Thompson, U. S. Atty., and Charles N. Estes, Jr., Asst. U. S. Atty., Albuquerque, N.M., for defendant-appellee.

Before SETH, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Plaintiff-appellant, Maximo Hernandez, brought this action under the Privacy Act, 5 U.S.C. § 552a, against defendant-appellee, Secretary of the Department of the Army. Plaintiff is a former civilian employee at White Sands Missile Range, New Mexico, who was employed by the Army. He was notified of his removal from federal service in September 1976 and his removal was effected on November 3, 1976.

In this suit commenced under the Privacy Act and the Fifth Amendment in August 1977 plaintiff claimed the right to access to several documents pursuant to § 552a(d)(1) and (g)(1)(B), an Inspector General's report and four memoranda prepared by an attorney in the White Sands Staff Judge Advocate's office. Plaintiff also contended that defendant had failed to maintain a record concerning him with such accuracy, relevance, timeliness and completeness as is necessary to insure fairness in any determination relating to the qualifications, character, rights or opportunities of plaintiff and consequently the discharge determination adverse to plaintiff was made in violation of § 552a(g)(1)(C). Finally, plaintiff claimed that defendant improperly disclosed certain of his records to others without his prior consent in violation of § 552a(b) and (g)(1)(D). (I R. 183–84).

After considering the evidentiary record, the trial court made two principal rulings. The court ordered that plaintiff be given full access to the Inspector General's report, except for portions deleted by the Department of the Army, as explained below. The court rejected the claims for damages but awarded costs and $1,500 in attorney's fees to plaintiff, denying all other relief, and plaintiff appealed.

I

As noted, plaintiff seeks access to an investigative report and to four memoranda, all of which are described more fully below.

The investigative report, entitled the Inspector General Report of Investigation (hereinafter ROI), was dated July 26, 1976. The investigation was conducted between May 28 and July 9, 1976. After several requests for access to the ROI by plaintiff, plaintiff was permitted to examine a sanitized version of the ROI—he was permitted to view the entire report including the statements given by witnesses to investigators, but the identity of the witnesses who declined to consent to the release of their testimony, and portions of the report which defendant thought might identify these witnesses, were excised. Plaintiff was permitted to examine this sanitized report, to make notes from it, but was not permitted to photocopy it. The ROI in this form, Defendant's Exhibit R, was made available to the district court for *in camera* inspection. By agreement of the parties the entire ROI, together with its exhibits, was marked as Defendant's Exhibit S and also submitted to the district court for *in camera* inspection. Neither plaintiff nor plaintiff's counsel have been permitted to examine the complete report. (I R. 202).

The four memoranda plaintiff sought, but to which he was denied access by defendant, consist of a list containing a description of certain documents sent and received by plaintiff and three other memoranda, the four exhibits being identified as Defendant's Exhibits T, U, V and W. The memoranda were prepared by John M. Lenko, an "Attorney Advisor [Contracts]" in the office of the Staff Judge Advocate at White Sands Missile Range. The parties agreed that these four exhibits could be viewed by the district court *in camera*. Neither plaintiff nor plaintiff's counsel have been permitted to review them. (I R. 60–61, 204–05).

In the pre-trial order the parties agreed that the question of liability would be decided entirely on the documentary evidence, including transcripts offered by the parties, and that no witnesses would be called. The issue of damages was to be tried at a later time before the court, if the judge determined that defendant was liable for any violation of the Privacy Act. (I R. 188).

The district judge in his first Order and Memorandum Opinion concluded that the defendant properly withheld that portion of the ROI which contained any material that would reveal the identity of the persons who declined to release their testimony, but that plaintiff was entitled to copy, not just examine, the remainder of the report, and the court ordered that this should be permitted. The court also concluded that defendant properly refused to release the four memoranda, that the ROI was fair and accurate, and that the Army was not liable for disclosing the ROI or EEO complaint files. After a subsequent hearing the court held that plaintiff could not recover damages, but was entitled to an injunctive order for the inspection and copying of the ROI in the form with the deletions noted, and an award of attorney's fees and costs. From these two orders disposing of all of plaintiff's claims, plaintiff brings this timely appeal.[1]

On appeal, plaintiff claims error in the denial of further injunctive relief and damages to him in that (1) he was entitled to access to the portions of the ROI which the district court concluded had been properly withheld; (2) he was entitled to access to the four memoranda; (3) defendant improperly disclosed the ROI and EEO files to other persons; and (4) plaintiff is entitled to actual damages since the defendant and his agents intentionally and willfully failed to maintain the ROI with accuracy, rele-

---

1. Following the district court's Order entered on March 23, 1979, which adjudicated only part of plaintiff's claims, plaintiff filed a notice of appeal on April 20, 1979. (I R. 240, 247). This notice was premature. *See* Rule 54(b), F.R. Civ.P. Following the district court's subsequent order entered on July 13, 1979, which adjudicated the remainder of plaintiff's claims,

plaintiff filed a notice of appeal on August 3, 1979. (I R. 275, I Supp.R. 1). Although the latter notice only stated that it appealed from the "Order entered in this action on July 12, 1979", we believe the intent of this pro se appellant to appeal from both orders is clear and treat the appeal as properly commenced.

vance, timeliness and completeness as required by the Privacy Act.

## II

First, we consider plaintiff's claim that the district court erred in not ordering the release to him of all portions of the ROI, including parts which would identify the persons giving the statements to the representatives of the Inspector General. The trial court held that the material was exempt from disclosure under 32 C.F.R. § 286a.10(b)(7), that the witnesses had been given assurances that their statements would be kept as secret as possible, that they had refused to consent to release of their testimony, and that they are entitled to have their identity kept secret.

 Plaintiff claims error in this ruling in several respects. First, he points to 5 U.S.C. § 552a(k)(5)[2] and argues that its exemption of investigatory material compiled solely for determining "suitability, eligibility, or qualifications for Federal civilian employment" is concerned only with investigations to determine the advisability of hiring employees, not to determine the advisability of their continued employment.[3] We disagree. Suitability for Federal civilian employment is a continuing matter and we are not persuaded that the narrow interpretation suggested is proper.

 Second, plaintiff argues that § 552a(k)(5) operates as an exemption in the case only if disclosure would reveal the identity of a source who furnished information "under an express promise that the identity of the source would be held in confidence . . . ," and that no such promise was made to these witnesses. It is true that the trial court's findings state that the witnesses were "given assurances" and there is some doubt arising from the statements made by the investigating officers to the persons giving the statements.[4] The

---

**2.** The trial court's Memorandum Opinion cited 32 C.F.R. § 286a.10 and quoted as pertinent § 286a.10(7), which exempts "[e]valuation material used to determine potential for promotion in the Armed Services. . . ." We do not feel this part of the regulations is the pertinent part and look instead to the statute cited in plaintiff's appellate brief, 5 U.S.C. § 552a(k)(5) and the regulations issued thereunder, discussed below.

**3.** 5 U.S.C. § 552a(k)(5) authorizes exemptions to be made for material which is

(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identify of the source would be held in confidence;

The Department of Defense authorized its components to provide for such specific exemptions. 32 C.F.R. § 286a.10(b)(5) (July 1, 1976). The Department of the Army then made the specific exemption as to this type of material by its own regulation designating "Exempted Record Systems." 32 C.F.R. § 505.9(b).

**4.** The witnesses were interviewed by Col. Phelps or Col. Dotur or by both officers. The statement of Col. Phelps before each witness gave his statement was as follows (I R. 198):

This is an official investigation concerning the allegations that individuals of the Missile Flight Surveillance Division of the National Range Operations Directorate have made threats against the Division Chief and have offered bribes for assistance in discrediting the Division Chief. It is being conducted by the direction of the Commander, Major General O. L. Tobiason. My report will be made to him and will be classified For Official Use Only.

The statement of Col. Dotur before each witness gave his statement was as follows (I R. 200):

An Inspector General is the confidential investigator/advisor to his commander. Information which is obtained and the reports prepared by the Inspector General are for the use of the commander who directed the investigation or inquiry and that commander's superiors. To meet the military requirements, testimony which you may give can be used within the Department of Defense for official purposes by people who have a need to know. It is the general policy to keep such information and reports on a closely held basis in order to encourage testimony from witnesses such as yourself, and confidential discussion among concerned personnel. In some instances, there may be public disclosure of Inspector General materials, as

exemptions from the individual's right of access must be narrowly construed and their requirements must be strictly met. *Nemetz v. Department of the Treasury*, 446 F.Supp. 102, 105 (N.D.Ill.); *see generally* "Congressional Findings and Statement of Purpose" to 5 U.S.C. § 552a, 5 U.S.C.A. at pp. 204–05. We nevertheless feel that the effect of the court's statements was to find that the witnesses were given an "express promise" that the identity of the source would be held in confidence. We conclude that this finding was not clearly erroneous.

Third, plaintiff says that even if the § 552a(k)(5) exemption applies, the subsection would be unconstitutional; that he had a right to procedural due process since he could only be discharged for cause under 5 U.S.C. § 7501 *et seq.*; that such an entitlement is recognized in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15; that a liberty interest is also implicated by a stigma from his discharge, citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; and that denying him the names and confrontation with the persons making the statements used in his termination deprived him of Fifth Amendment rights. (Brief of Appellant at 2–3).

■■ The constitutional claim was mentioned in plaintiff's complaint by a general allegation of "denial of due process" and violation of "Plaintiff's rights under . . . . [the Privacy Act] and the Fifth Amendment to the United States Constitution," (I R. 8), but the claim was not stated in the pre-trial order as an issue of fact or law. Since the pre-trial order supersedes the pleadings and becomes the governing pattern of the suit, the constitutional claim was not presented in the district court, which did not decide the issue. *See Case v. Abrams*, 352 F.2d 193, 195–96 (10th Cir.). And issues not raised in the trial court should not be considered on appeal, except to prevent manifest injustice. *See Nulf v. International Paper Co.*, 656 F.2d 553, 559 (10th Cir.); *Gomes v. Williams*, 420 F.2d 1364, 1367 (10th Cir.).

■ However, because of the constitutional implications we have considered the proposition and find no substance to the due process claim under *Arnett, Roth* and *Sindermann*. We have no controversy challenging plaintiff's discharge itself or any grounds stated therefor, but only an action under the Privacy Act on the handling of documents, with the attempted assertion of a due process claim lacking substance.

■ Lastly, plaintiff says that without the opportunity to confront and examine persons who gave statements there can be no determination as to the accuracy, relevance, timeliness and completeness of the statements taken and of any summary of them; and that such accuracy, etc., is necessary to assure fairness in any determination about plaintiff's termination and any stigma which operates to foreclose other employment.

The argument runs counter to the wording and operation of the statute. A remedy for amendment of a record so that it can be made accurate, relevant, timely and complete is provided by § 552a(d)(1) and (2), with access being allowed to records on request by (d)(1) and then a correction procedure being laid out by (d)(2) to make the

in courts-martial, elimination actions, access by the Federal Bureau of Investigation, the General Accounting Office, or as required by the Freedom of Information Act, as amended, the Privacy Act of 1974, or as otherwise provided by law and regulation. Normally, however, any release outside the Department of Defense requires the approval of the Inspector General and Auditor General, or the Secretary of the Army. In such instances the release will be limited to summaries or statements of fact when possible. Release of direct testimony, when unavoidable, will be

kept to the minimum necessary for satisfaction of the legal or public interest requirements. Information which is obtained by an Inspector General may be made available to members of Congress and other concerned persons, when necessary to respond to complaints or requests for advice, assistance or information.

After each interview a further statement was made by the officer and he asked if the witness consented to release his statement. Each of those in question declined to do so.

record accurate, etc. However, the statute clearly provides that one of the access provisions from which specific exemptions may afford relief is the access scheme of § 552a(d), and the implementing regulations cited earlier, *see* note 3 *supra*, made that specific exemption. Thus the statutory scheme itself answers the contention.

Moreover, the argument proves too much. If assertion of a claim under 5 U.S.C. § 552a(g)(1)(C) of failure to maintain any record with accuracy, relevance, timeliness and completeness would mean that the plaintiff is entitled to have the identity of persons giving statements to establish alleged inaccuracy or the like, then all the exceptions could be swallowed up. The plaintiff can have access to the records, except parts identifying the witnesses as he had here, unless they are otherwise exempted, to develop his claim of inaccuracy, etc. There is some impediment by operation of the exemptions but that must be accepted unless the exceptions are to be destroyed.

In sum, we affirm the trial court's rulings and the extent of relief afforded with respect to the Inspector General's report.

### III

We next consider whether the district court properly held that plaintiff was not entitled to access to the four memoranda prepared by John M. Lenko.

The defendant argues that these memoranda are exempt from access under 5 U.S.C. § 552a(d)(5), which provides:

> [N]othing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding.

The district court agreed with defendant's position, finding:

> After reviewing the four memoranda prepared by Captain Lenko in an *in camera* inspection the Court finds that they were prepared by Captain Lenko in his advisory capacity and in anticipation of civil litigation and therefore under sec-

tion (d)(5) of the Act plaintiff is not entitled to those memoranda.

(I R. 237).

■ On appeal, plaintiff challenges this ruling by several arguments, vigorously contending that he is entitled to access to the memoranda. First, plaintiff says that the four memoranda are "factual, and do not involve the 'mental impressions, conclusions, opinions or legal theories' of Mr. Lenko, and therefore, do not fall within the attorney's work-product privilege." (Brief of Appellant at 5). Plaintiff thus argues that § 552a(d)(5) only exempts material that falls within the attorney work-product privilege, but cites no authority to support such a proposition. We do not agree that § 552a(d)(5) is so limited. The subsection specifically exempts "*any* information compiled in reasonable anticipation of a civil action or proceeding." (Emphasis added). The exemption is not confined to a work-product privilege, but was meant to afford the broad protection its terms imply. *See Smiertka v. United States Dept. of Treasury, Internal Revenue Service*, 447 F.Supp. 221, 227–28 (D.D.C.), *vacated and remanded on other grounds*, 604 F.2d 698 (D.C.Cir.).

Second, plaintiff contends that during this period Mr. Lenko was an active participant, not merely a legal advisor. Plaintiff points to the role Mr. Lenko played in preparing the letter of proposed removal of plaintiff and would have us conclude that the memoranda were not an attorney's work-product. (Brief of Appellant at 5). Plaintiff's argument fails again for the reasons just discussed. The § 552a(d)(5) exemption is not limited to an attorney's work product, but extends to any records compiled by counsel or other persons in reasonable anticipation of a civil action or proceeding.[5] After examining the four memoranda and other exhibits before the trial judge, we agree with his finding that the memoranda were prepared in reasonable anticipation of civil litigation.

Third, plaintiff argues that the denial of the documents has resulted in an infringe-

---

5. In *Smiertka, supra*, the exemption was held applicable to documents prepared by and at the direction of lay agency staff persons. 447 F.Supp. at 227–28.

ment of his constitutional right to confront and examine Mr. Lenko; that without such an opportunity he is deprived of his property interest in his job and his liberty interest by stigma, citing *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15; *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. (Brief of Appellant at 5–6). However, this constitutional argument was not presented to the district court. As noted earlier, the only references in the record to such constitutional claims were general allegations of denial of due process and violation of plaintiff's rights under the Fifth Amendment, contained in plaintiff's complaint. (I R. 8).[6] There was, however, no mention of this issue in the pre-trial order, (I R. 8, 183–86), and no discussion of it in the trial court's opinions. Since the pre-trial order supersedes the pleadings and becomes the governing pattern of the lawsuit, the constitutional claim was not properly presented in the district court, which did not decide the issue. *See Case v. Abrams*, 352 F.2d 193, 195–96 (10th Cir.). Issues not raised and presented to the trial court will not be considered on appeal, except to prevent manifest injustice. *See Nulf v. International Paper Co.*, 656 F.2d 553, 559 (10th Cir.); *Gomes v. Williams*, 420 F.2d 1364, 1367 (10th Cir.). As explained earlier in Part II, we have considered the arguments because of the due process implications and are satisfied they are without substance. There is no merit to the asserted constitutional claim under the *Roth, Sindermann* and *Arnett* cases since we have no actual controversy over an allegedly wrongful discharge or the grounds therefor. As noted, this is only an action under the Privacy Act, with the attempted assertion of an insubstantial constitutional claim.

## IV

Plaintiff argues further that the use of the plaintiff's EEO files and the ROI was in violation of his rights under § 552a(b) and the Fifth Amendment against agency disclosure without his written consent; that the EEO files were improperly used as a basis for his removal, not for EEO purposes; and that the use of his files was not within the "routine use" exception as defined by § 552a(a)(7). (Brief of Appellant at 7–8).

The record shows use of the EEO files and the ROI by only Messrs. Samaniego and Lenko. Mr. Samaniego undertook his work as representative of the White Sands Civilian Personnel office and Mr. Lenko was on duty in the office of the Staff Judge Advocate at White Sands. John Lenko testified by deposition that he obtained plaintiff's EEO files in an attempt to find allegedly libelous letters written by plaintiff. His testimony indicates that he obtained these files from the "EEO office." He testified, "I called over on the phone and asked that they be delivered and they were." (V R. 11–13).

Hector Samaniego gave similar deposition testimony. In the Fall of 1976 he was employed in the Civilian Personnel Office at White Sands Missile Range as a management and employee relation specialist. His duties were basically to assist managers in the daily handling of personnel matters. He testified that he and John Lenko reviewed plaintiff's EEO files. To his knowledge he and Mr. Lenko were the only ones to conduct such a review. (IV R. 4, 7, 10, 14). He understood that the EEO files were reviewed to see whether any allegations made by plaintiff were actionable items; in other words, whether they could be used in a disciplinary action. (IV R. 30, *see also* IV R. 9, 10, 19, 32, 39–41).

There was no evidence in the record that these records were disclosed to Anthony Movsesian, who was mentioned in the pretrial order. (*See, e.g.*, I R. 58–59; IV R. 14).

---

**6.** As noted, we find no reference in the record to such constitutional arguments other than these general allegations in the complaint which were not preserved as an issue in the pre-trial order. We do note that one or more pages of plaintiff's "post-trial" brief were apparently not made part of the record. (I R. 213).

The Privacy Act limits the circumstances when an agency can disclose a record to others. Section 552a(b) provides in part:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

(1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

■■■■ The district court concluded that defendant was not liable for improperly disclosing the EEO files, finding that they were not maintained or disclosed by the Department of the Army. We follow a different analysis because we feel that the pertinent regulations tend to show that the EEO files were actually maintained by the Department of the Army.[7] We nevertheless hold that there was no violation of the Act by the furnishing of the records to Messrs. Lenko and Samaniego. If the records were maintained by the Civil Service Commission and disclosed by it, such actions could not be the basis for liability here since plaintiff did not bring his civil action against that agency. See § 552a(b) and (g)(1)(D). On the other hand, if the EEO files in question were maintained by the Department of the Army, as we feel they

were, and were disclosed by it to the officers, such disclosure was permitted "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." § 552a(b)(1). Both Lenko and Samaniego had need of plaintiff's EEO files in performance of their duties. Their duties included advising the White Sands command group concerning personnel matters. The EEO files were reviewed and analyzed to determine whether any adverse personnel action should be taken against plaintiff based on his statements and actions, and the materials were allegedly contained in plaintiff's EEO files. Thus any such disclosure by the Army was not improper. *See Beller v. Middendorf,* 632 F.2d 788, 798–99 n.6 (9th Cir.), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405; *cf., Parks v. United States Internal Revenue Service,* 618 F.2d 677, 681 (10th Cir.).

### V

Plaintiff argues further that he is entitled to actual damages which were denied by the trial court. More specifically he says that he stated a claim for damages under § 552a(g)(1)(C) and (g)(4) in that defendant and his agents intentionally and willfully failed to maintain the ROI and the other memoranda in the accurate, relevant, timely and complete manner required by the Privacy Act, that consequently determinations adverse to him were made, and that

7. The district court's order states (I R. 238):

Hernandez states that the EEO file is contained in a system of records maintained by the Civil Service Commission. Section (b) of the Act prohibits an agency from disclosing a record to any person or agency. The Army does not maintain the EEO files and therefore cannot be liable for the disclosure of the file by the Civil Service Commission to the Army. If, however, the Army improperly disclosed the file while in its possession it would be liable to Hernandez. The Civil Service disclosed the files to Mr. Lenko and Mr. Samaniego. There is no evidence that the Army disclosed the EEO complaint files to anyone. It is concluded that the Army is not liable under section (b) of the Act for improperly disclosing the EEO files.

We feel that the regulations of the Civil Service Commission tend to show that the records

were maintained by the Army, not the Civil Service Commission. 5 C.F.R. Part 713 (1975). The regulations by their own terms are applicable to specific agencies including the Department of the Army. 5 C.F.R. § 713.201(b) (1975). The regulations require an agency to appoint EEO officers and counselors, and state that the Director of Equal Employment Opportunity of the agency is to be under the immediate supervision of the head of his agency. 5 C.F.R. § 713.204(c) (1975). They also require an agency to establish a complaint file which includes the EEO complaint and related documents. 5 C.F.R. § 713.222 (1975). These regulations show that an agency such as the Department of the Army has its own EEO office which collects and thus maintains EEO complaint files. Moreover, the deposition testimony does not point to a different conclusion.

he was therefore erroneously denied damages.[8] Plaintiff thus only makes a general allegation that § 552a(g)(1)(C) was violated.[9] (Brief of Appellant at 9).

Plaintiff was permitted to review the ROI in its sanitized form prior to the district court's decision and the Army was subsequently ordered to allow the plaintiff to copy the report in the same form. (I R. 240, 275). Plaintiff thus had access to the entire report, except that the identities of certain witnesses and portions of the report which would identify these witnesses were withheld. Thus if some portion of the report was not accurate, relevant, timely or complete, plaintiff had the opportunity to point out these portions in his appellate brief for this court's consideration. It is true that because of the exemptions he was not given parts of the report identifying sources of the information where the witnesses declined to consent to release of their statement and he was denied any access to the other memoranda which were found to have been prepared in reasonable anticipation of a civil action or proceeding. However, as explained earlier we cannot agree that the exemptions must give way when such a claim is pursued.

Thus plaintiff has made no evidentiary showing of inaccuracy or other deficiency in the report or the memoranda.[10] In the absence of any showing to the contrary, we will not assume any violation of the Act or any error in the district court's findings and conclusion that the ROI complied with the Act. Accordingly no error is shown in the denial of damages to plaintiff for inaccuracy or the like in the records. Moreover the Act does not provide for recovery of damages for the denial of further access to the ROI by the Army, which the trial court remedied by its injunctive order. See § 552a(g)(3)(A) and (4); *Parks v. United States Internal Revenue Service, supra,* 618 F.2d at 684.

## VI

We have examined plaintiff's other appellate arguments. We conclude that they are without merit and require no further discussion. Accordingly the judgment is

AFFIRMED.

8. The district court's findings and conclusion are as follows (I R. 237–38):

The [ROI] contains the testimony of several witnesses and a summary of the testimony and conclusions of the investigators. The Army, of course, is not responsible for the statements of the witnesses. After reviewing the [ROI] the Court finds that the summary of the testimony was accurate, complete and fair and the conclusions of the investigators were made in good faith. Therefore the Court concludes that the Army did not violate section (g)(1)(c) of the Act.

(I R. 237–38).

9. Section 552a(g)(1)(C) provides in part:

Whenever any agency ... fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual ... the individual may bring a civil action against the agency ...

Section 552a(g)(4) provides for recovery of actual damages if the agency willfully or intentionally violates § 552a(g)(1)(C) or (D), but in no case less than $1,000, costs and reasonable attorney's fees.

10. As noted, Exhibits R through W were filed with the district court for *in camera* inspection. They were not, however, originally made part of the record on appeal. This court on its own motion ordered the defendant to file Exhibits R through W with the district court. The exhibits were placed under seal and certified to this court as a supplement to the record.