Richard J. NOLAN, Plaintiff–Appellant,

v.

U.S. DEPARTMENT OF JUSTICE and United States of America, acting through its agency, Defense Investigative Service, Defendants–Appellees.

No. 91–1139.

United States Court of Appeals, Tenth Circuit.

Aug. 18, 1992.

Wendy Keats, Atty., Civ. Div., U.S. Dept. of Justice (Leonard Schaitman, Atty., Civ. Div., U.S. Dept. of Justice, Stuart M. Gerson, Asst. Atty. Gen., and Michael J. Norton, U.S. Atty., Denver, Colo., with her on the brief), Washington, D.C., for defendants-appellees.

Richard J. Nolan, pro se.

Before LOGAN, ANDERSON, Circuit Judges, and THEIS, Senior District Judge.*

THEIS, Senior District Judge.

Plaintiff-appellant Nolan appeals the district court's adverse summary disposition of his action against the Department of Justice (DOJ) and the Defense Investiga-

---

* Honorable Frank G. Theis, Senior United States District Judge for the District of Kansas, sitting by designation.

tive Service (DIS) for violations of the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act, 5 U.S.C. § 552. We dismiss Nolan's DIS appeal for want of appellate jurisdiction, and affirm the district court's grant of summary judgment in favor of DOJ.

## I

Appellant Richard Nolan, an attorney, was previously employed by various agencies in the federal government. In January 1988, while serving as regional counsel for the Environmental Protection Agency, he received an offer of employment from the United States Attorney's Office, contingent on security clearance and approval by the United States Attorney General. Nolan expected a routine security clearance.

Earlier, on July 22, 1987, Nolan had requested all investigative records pertaining to himself maintained by the Defense Investigative Service. The DIS produced those documents on June 16, 1988. Pursuant to § 552a(d)(1) of the Privacy Act,[1] Nolan sought to amend certain statements contained in the documents. He claimed that those statements, uttered by his former EPA supervisors, Barnes and Adams, falsely "accus[ed] him of disloyalty, lack of leadership ability, and incompetence." DIS refused to amend the statements except to delete all references to two particular allegations made by Adams.

On November 3, 1988, when he had still not received his appointment, Nolan made a Privacy Act request with the Department of Justice to access all his records. About a year later, on November 24, 1989, when the DOJ records had not been released, Nolan initiated this action against DOJ to access those records, and against DIS to correct or expunge the unfavorable statements in the DIS records. Four days after the suit was filed, the DOJ released 411 pages of documents, followed by an additional 1000 pages of documents in March 1990. The released documents were heavily redacted. A great number of doc-

uments, however, were withheld completely.

The district court granted summary judgment for DOJ on March 18, 1991, holding that the redacted and unreleased documents were properly exempt under sections 552a(j)(2) and (k)(5) of the Privacy Act. On July 17, 1991, the district court entered a second order, granting summary judgment in favor of DIS on the ground that the adverse statements that Nolan sought to amend were not based on clearly erroneous facts. This appeal followed.

## II

We first address the appellees' assertion that this Court lacks appellate jurisdiction over the DIS claim due to Nolan's failure to file a timely notice of appeal. The district court entered two separate orders in favor of two separate defendants on two separate occasions. The district court first dismissed the claim against DOJ on March 18, 1991. Nolan duly filed a notice of appeal. However, because the claim against DIS still remained unadjudicated in the district court, the March 18 district court order was not yet final and appealable. This Court concluded that Nolan's notice of appeal was premature and directed Nolan either to submit a certified copy of a district court order granting certification under Fed.R.Civ.P. 54(b) or to file a final district court order adjudicating the remaining claims in this case—in order to avoid summary dismissal of his DOJ appeal.

On August 1, 1991, after the district court had dismissed the remaining DIS claims, Nolan filed a copy of the district court's July 17 order coupled with a Docketing Statement Supplement, which stated in full: "Comes now the Plaintiff–Appellant and supplements the Docketing Statement with the included final Judgment and Memorandum Opinion and Order of the Court below in response to this Court's letter of July 1, 1991." On Nolan's cover letter was written: "Enclosed please find

---

**1.** Section 552a(d) of the Privacy Act affords individuals the right to access and amend records pertaining to themselves maintained by government agencies, save those records specifically exempted by sections 552a(j) and 552a(k).

Plaintiff–Appellant's supplement to the Docketing material which is the District Court's final order and memorandum opinion. I believe that this should complete the Docketing requirements."

DIS claims that the appellant failed to file a notice of appeal from the district court's July 17 order granting summary judgment in favor of DIS. According to DIS, the filing of the July 17 final order, while sufficient to ripen the prematurely-appealed March 18 order dismissing DOJ, does not suffice to confer appellate jurisdiction over the July 17 judgment itself. DIS contends that, to appeal the July 17 judgment, the appellant was required to file a separate notice of appeal within 60 days of the entry of the July 17 judgment. Failing to do so, argues DIS, the appellant has not properly invoked this Court's jurisdiction.

Fed.R.App.P. 3(c) provides that "[a]n appeal permitted by law as of right from a district court to a court of appeals shall be taken by filing a notice of appeal with the clerk of the district court within the [allowable] time." The notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." Fed.R.App.P. 3(c).

■ The requirements of Rule 3 should be liberally construed. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988); *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962). "[M]ere technicalities" should not obstruct the consideration of a case on its merits. *Foman*, 371 U.S. at 181, 83 S.Ct. at 229. As such, even when a formal notice of appeal is defective or non-existent, "a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Torres*, 487 U.S. at 316–17, 108 S.Ct. at 2408–09. Subjecting Rule 3 to a liberal construction does not, however, excuse compliance with the rule. The dictates of Rule 3 are jurisdictional. Each requirement in Rule 3 must be satisfied as a prerequisite to appellate

review. *Smith v. Barry*, —— U.S. ——, ——, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992).

■ In this case, the appellant did not file a formal notice of appeal from the DIS judgment. The sole notice of appeal, filed prematurely by Nolan, referenced only the dismissal of his DOJ claim. The filing of the district court's final order merely served to perfect Nolan's premature appeal of the DOJ ruling. *See Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988) (A premature notice of appeal becomes effective if the lower court has adjudicated all remaining outstanding claims before the appellate court considers the merits of the appeal.). We have never held, however, that the filing of a final order serves to ripen not only the previous premature appeal but also any subsequent appeals arising out of the same case. On the contrary, we stated in *Lewis* that when a final adjudication occurs, we will consider the premature appeal to have ripened and "will consolidate or companion any *subsequent* appeals arising out of the same district court case." *Id.* at 645. Implicit in our statement is that any subsequent appeals must separately and individually comply with the Rules of Appellate Procedure. Merely submitting a final district court order for the purpose of perfecting a premature appeal does not automatically effectuate the appeal of every judgment or order rendered in the entire case.

■ There was moreover no functional equivalent of a notice of appeal filed within the allowable time to appeal the DIS judgment. Although an appellate brief may serve as a functional equivalent of a notice of appeal, *Smith v. Barry*, —— U.S. at ——, 112 S.Ct. at 682, Nolan's brief-in-chief was filed outside the allowable time, and cannot therefore be deemed a timely functional equivalent. *Id.* (appellate court may consider a filing styled as a brief if the filing is timely under Rule 4 and conveys the information required by Rule 3). Furthermore, nothing in Nolan's actions or communications manifested his intent to appeal both the DIS and DOJ rulings. *Cf. Dupree v. United Parcel Serv., Inc.*, 956

F.2d 219, 220 n. 1 (10th Cir.1992) (single notice of appeal was adequate where the record shows that the parties clearly intended to appeal both of the district court's orders). Nolan filed the final district court order in response to this Court's directive that he do so to avoid summary dismissal of his DOJ appeal. We cannot discern from such a filing an intent also to appeal the DIS judgment. Likewise, Nolan's cover letter expressing his belief that "this should take care of the docketing requirements" conveys nothing about his intent to appeal both orders.

Because Nolan has failed to comply with Rule 3(c)'s requirement of designating the specific judgment from which the party appeals, this Court lacks jurisdiction to consider the merits of the DIS claim. Accordingly, the DIS appeal is dismissed.

### III

With respect to Nolan's appeal from the dismissal of his DOJ claims, he argues principally that the district court erred in denying his rights to access and amend the records that were redacted or withheld by the DOJ. The district court concluded that the redactions and withholdings of the two FBI files at issue—the public corruption investigation file (FBIHQ file 58–11772) and the employment background investigations file (FBIHQ file 77–129721)—were properly exempted under 5 U.S.C. §§ 552a(j)(2) and (k)(5).

Subsection (j)(2) authorizes an agency to promulgate rules exempting its system of records from access and amendment where the agency concerned is principally involved in law enforcement and the system of records consists of "information compiled for the purpose of a criminal investigation ... and associated with an identifiable individual." Subsection (k)(5), on the other hand, exempts

"investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment ... but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence."

Pursuant to subsections (j)(2) and (k)(5), the DOJ promulgated rules exempting its Central Records System from access and amendment under § 552a(d) of the Privacy Act.[2] *See* 28 C.F.R. 16.96.

We first address the (j)(2) exemption of FBIHQ file 58–11772. This file, retrieved from the Central Records System, was compiled in the course of a federal corruption investigation, of which Nolan was one of several subjects. The investigation concluded without any prosecutorial or disciplinary action recommended against Nolan. We agree with the district court that these records are exempt under (j)(2): the records are located in a system of records maintained by the DOJ, a criminal law enforcement agency; they consist of information compiled for the purpose of a criminal investigation and associated with an identifiable individual; and the records have been exempted from access and amendment by the DOJ through proper rule-making procedures.

FBIHQ file 77–129721 is also properly exempt. The records were obtained in the course of background checks conducted on the appellant when he applied for three different positions with the DOJ. Empowered by 5 U.S.C. § 552a(g)(3)(A), the district court undertook an *in camera* examination of all the documents purportedly exempt under (k)(5), and verified that disclosing such information would reveal the identity of sources who were given an express promise of confidentiality. Nolan apparently does not challenge this conclusion.

Were this case one involving solely the applicability of the statutory exemptions, the result would be clear-cut: the DOJ files at issue plainly meet the requirements set forth by exemptions (j)(2) and (k)(5). But Nolan, while conceding the applicability of those exemptions, implores the Court to scrutinize the motives of the government agency in exempting the records. As the

---

2. The appellant does not contest the DOJ's com- pliance with the rule-making requirements.

appellant admits, "Nolan does not dispute these cited exemptions if they are used for a lawful purpose, but here he respectfully asks this Court to provide him his rightful opportunity to discover and demonstrate that the exemptions were not used for such purpose." Appellant's Reply Brief at 4. We are not unsympathetic to Nolan's predicament: how can he show that the government acted maliciously so as to violate the Act[3] when he cannot have access to the records that may contain the malicious information? Nolan also desires to graft an additional requirement that "when otherwise exempt records unfairly produce an adverse effect on an individual so devastating as to deprive that individual of his basic constitutional rights to seek employment and to financially provide for himself and his family, the exemptions ... must give way to the individual's rights as mandated by 5 U.S.C. § 552a(g)." *Id.*

We addressed a similar situation in *Hernandez v. Alexander,* 671 F.2d 402 (10th Cir.1982). There, the plaintiff-appellant sought access to an investigative report and memoranda discussing his continued employment with the Department of the Army. As to the investigative report, the government agency invoked exemption (k)(5), and redacted portions of the document that contained the identity of sources who declined to consent to the release of their testimony. The plaintiff argued that "without the opportunity to confront and examine persons who gave statements there can be no determination as to the accuracy, relevance, timeliness and completeness of the statements." *Id.* at 407. We rejected the plaintiff's argument, reasoning that "if assertion of a claim ... of failure to maintain any record with accuracy, relevance, timeliness and completeness would mean that the plaintiff is entitled to have the identity of persons giving statements to establish alleged inaccuracy or the like, then all the exceptions could be swallowed up." *Id.* at 408. We concluded that, as a matter of necessity, "[t]here is some impediment by operation of the ex-

emptions but that must be accepted unless the exceptions are to be destroyed." *Id.*

■ Nolan's unfortunate predicament is the necessary and unavoidable concomitant of the statutory exemptions. If he were allowed to access records that are concededly exempt, then the statutory exemptions would become a nullity. Such an absurd result would not comport with congressional intent in creating a system of exemptions. One of the fundamental premises of the Privacy Act is that "all records compiled on an individual must on request be revealed to that individual *unless they fall within one of more specifically enumerated exemptions." Londrigan v. Federal Bureau of Investigation,* 670 F.2d 1164, 1169 (D.C.Cir.1981) (emphases added). In justifying exemption (j)(2), the Senate Committee Report on the Privacy Act declares that investigative or intelligence files maintained by law enforcement agencies "contain highly sensitive and usually confidential information ... [and] it would not be appropriate to allow individuals to see their own intelligence or investigative files. Therefore, the bill exempts such information from access and challenge requirements...." S.Rep. No. 1183, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6916, 6938. Similarly, Congress determined that it would significantly impede the government's investigative process to allow disclosure of the identity of sources who furnish information under an express promise of confidentiality. *See* 5 U.S.C. § 552a(k)(5). Congress thus allows agencies to categorically prohibit disclosure of information under certain well-defined circumstances.

■ Nolan provides no authority to support his exhortation that the district court explore the motives of the agency or balance the parties' interests whenever the exempt records produce devastating effects. We decline to impose any such requirements. Where, as here, an agency has properly exempted its records, the

---

**3.** The Privacy Act affords damages to an individual who shows that the agency intentionally and willfully failed to maintain records with accuracy, relevance, timeliness and completeness. 5 U.S.C. § 552a(g)(1)(C), (g)(4)(A).

agency no longer has any obligation to disclose those records—irrespective of the underlying motives of the agency or the impact of the records upon the parties.[4]

■ Aside from the exemption issue, the appellant claims that the district court erred in deferring discovery pending the disposition of DOJ's summary judgment motion. District courts have broad discretion in controlling the discovery process. *See* Fed.R.Civ.P. 26(c). Considering that the appellant sought to discover records that were exempted by the Privacy Act, the district court acted well within its discretion in deferring discovery so as to determine the propriety of the exemptions. *See Simmons v. Department of Justice*, 796 F.2d 709 (4th Cir.1986) (construing Freedom of Information Act).

■ We also reject the appellant's argument that the FBI intentionally and willfully dragged its feet in releasing the requested records. The Privacy Act does not impose a specific time limitation on agency action. Moreover, the record does not support the appellant's contention that the FBI did nothing until suit was filed: the FBI released hundreds of pages of documents days after the lawsuit, which indicates that the FBI had been processing Nolan's request long before his suit was filed.

We therefore AFFIRM the district court's grant of summary judgment in favor of DOJ.

---

**4.** Although Nolan's briefs discuss only the Privacy Act, he alluded during oral arguments that his appeal is also based on the Freedom of Information Act (FOIA). The results would remain unchanged, however. Like the Privacy Act, the Freedom of Information Act exempts confidential law enforcement records furnished by confidential sources. *See* 5 U.S.C. § 552(b)(7). As such, the public corruption materials are exempted by the FOIA. The identity of the sources in the employment background investigation is also protected because, although the file does not itself involve a criminal investigation, the withheld information was obtained from interviews during the course of a criminal investigation.