**In Re Albert Troy HATCHER and Janis D. Hatcher, Debtors.**

**William J. WADE, Trustee for Mid–State Trust II, Appellant,**

v.

**Albert Troy HATCHER and Janis D. Hatcher, Appellees.**

BAP No. EO–96–43.
Bankruptcy No. 96–71607.

United States Bankruptcy Appellate Panel, Tenth Circuit.

June 4, 1997.

Lawrence A.G. Johnson, Tulsa, OK, for Appellant.

Catherine Doud (Robert Inglish with her on the brief), of Inglish & Inglish, Okmulgee, OK, for Appellees.

Before McFEELEY, Chief Judge, PEARSON, and BOULDEN, Bankruptcy Judges.

BOULDEN, Bankruptcy Judge.

William J. Wade, Trustee for Mid–State Trust II (Wade), appeals an order of the United States Bankruptcy Court for the Eastern District of Oklahoma sustaining in part and overruling in part an Objection filed by Albert Troy Hatcher and Janis D. Hatcher, the debtors in this chapter 13 case (Debtors), to Wade's Proof of Claim, and sustaining in part and overruling in part Wade's objection to the confirmation of the Debtors' proposed Chapter 13 plan (Plan). *See In re Hatcher*, 202 B.R. 626 (Bankr.E.D.Okla. 1996).

We are asked to determine whether the Bankruptcy Court was correct in (1) disallowing Wade's post-petition attorney's fees incurred in prosecuting an objection to the Debtors' Plan and filing Wade's Proof of Claim, and (2) refusing to hold that the Plan, which proposed a sixty-month cure of a pre-petition default, was *per se* unreasonable un-

der 11 U.S.C. § 1322(b)(5)[1] and, therefore, could not be confirmed under § 1325. *Id.* at 629–32. For the reasons set forth below, we AFFIRM the Bankruptcy Court's order disallowing Wade's request for post-petition attorney's fees, but decline to review the issue of the *per se* unreasonableness of a sixty-month cure under § 1322(b)(5) for lack of appellate jurisdiction.

## I. BACKGROUND

### The Pre–Petition Debt

In 1991, the Debtors purchased a home and executed a Non–Negotiable Promissory Note (Note) and Mortgage in favor of Wade in the amount of $36,698.40. The Note represented $17,000 of the home's purchase price, plus $19,698.40 in finance charges at 10 per cent interest over the eighteen-year term of the Note, payable in monthly installments of $169.90 each. The Note also provided, in relevant part, that:

> It is further agreed that if it becomes necessary to enforce collection and upon referral to an attorney, not a salaried employee of the holder, I/we, or either of us agree to pay a reasonable attorney fee not to exceed 15 per cent of the unpaid debt and all costs of collection.

In November 1995, Wade commenced a foreclosure action against the Debtors. Wade informed the Debtors that their mortgage would be reinstated if they paid back payments plus other miscellaneous charges. In December 1995, Mrs. Hatcher's mother paid Wade $5,316.26, including $2,406.13 in attorney's fees, and the mortgage was reinstated.

The Debtors thereafter made $169.90 monthly payments to Wade on January 25, February 9, May 1, and May 9, 1996. However, apparently as a result of the gap in payments, on May 15, 1996, Wade commenced a second foreclosure action against

the Debtors. On July 10, 1996, a Journal Entry of Judgment was entered by the state court in the foreclosure action stating: "[T]here is owing from the [Debtors] upon a note and mortgage sued upon herein the sum of $15,855.43 plus $4.34 per diem from 4/29/96 ..., together with an attorney fee of *$3,000.00,* being 15% of the 'balance due' upon the note and mortgage." *Hatcher,* 202 B.R. at 628 (emphasis in the original). Fifteen per cent of the balance due was $2,378.31, not $3,000. A sheriff's sale of the Debtors' home was scheduled, but was stayed because on August 16, 1996, the Debtors filed a petition seeking relief under chapter 13 of the Bankruptcy Code.

### Wade's Proof of Claim

Shortly after the filing of the petition, Wade filed a secured Proof of Claim (Claim). The Claim itemized the total pre-petition arrearages on the Note and Mortgage as follows:

| | |
|---|---|
| Payments Due | $1,019.40 |
| Insurance Advanced | $ 191.91 |
| Taxes Advanced | $ 0.00 |
| Late Fees | $ 10.00 |
| Attorney Fees Actually Paid to Attys | $2,329.64 |
| Court Costs Advanced | $ 620.10 |
| Total Arrearages | $4,171.05 |

The Debtors filed an Objection to Claim of William J. Wade, Trustee (Claim Objection) asserting, in relevant part, that the Claim included $3,000[2] in pre-petition attorney's fees from the uncontested foreclosure proceeding and that those fees were unreasonable in light of the work performed.

### The Debtors' Chapter 13 Plan

The Debtors' Plan proposed payment to creditors over sixty months, and asserted as cause that the extended term was necessary to pay secured creditors. The Plan provided that current payments on the Note would be paid to Wade directly by the Debtors through monthly payments. A pre-petition arrearage of $3,979.60, including $679.60 in payments, $300.00 in costs, and $3,000 in

---

1. Future references are to Title 11 of the United States Code unless otherwise noted.

2. There is no explanation in the record why the Debtor asserted Wade's Claim contained $3,000 in pre-petition attorney's fees, as opposed to the $2,329.64 set forth in the Claim.

disputed attorney's fees, would be paid to Wade by the chapter 13 Trustee from payments made by the Debtors through the Plan.

Wade filed an Objection to Plan (Plan Objection) asserting, in relevant part, that the Plan could not be confirmed because its treatment of his Claim did not include the "proper amount of arrearages with a reasonable attorney fee pursuant to § 1322(b)(2) together with interest thereon over the life of the plan pursuant to § 325(a)(B)5(ii) [sic]." Wade argued that additional post-petition attorney's fees of $850, representing a reasonable fee to process the Plan Objection and file the Claim must be paid through the Plan. Wade also complained that the Plan was defective because it did not cure the Debtors' pre-petition defaults within a reasonable time of thirty-six months. *See* 11 U.S.C. § 1322(b)(5) (cure must be made within a "reasonable" time).

*The Bankruptcy Court's Opinion*

The Bankruptcy Court held a hearing at which it considered the confirmation of the Debtors' Plan, Wade's Plan Objection, and the Debtors' Claim Objection. At the hearing the Debtors objected to Wade's post-petition attorney's fees in addition to his pre-petition attorney's fees. After hearing evidence, the Bankruptcy Court issued an Opinion which included findings of fact, conclusions of law, and two orders (Objection Order). One part of the Objection Order granted in part and denied in part the Debtors' Claim Objection, concluding that Wade was entitled to $2,378.31 [3] in pre-petition attorney's fees, or fifteen per cent of the balance due in the state court foreclosure proceeding. *Hatcher*, 202 B.R. at 631–32.[4] The Bankruptcy Court also concluded that Wade

was not entitled to any post-petition attorney's fees. The Opinion first found that the parties' contract capped attorney's fees at fifteen per cent represented by the $2,378.31 pre-petition attorney's fees already included in Wade's Claim. The Bankruptcy Court then determined that post-petition fees would only be justifiable if they were authorized by the Bankruptcy Code. Finding Wade to be an undersecured creditor, the Bankruptcy Court concluded that Wade was not entitled to post-petition attorney's fees under § 506(b).

The Objection Order also denied confirmation of the Plan, but overruled Wade's Plan Objection related to the term of the Plan. The Bankruptcy Court made detailed findings to support allowance of the sixty-month cure regarding, among other things, the terms of the Plan, the timing of payments to Wade and other creditors, the necessity of the home for the Debtors' reorganization and the composition of the arrearage amount. *Hatcher*, 202 B.R. at 629–31. The Bankruptcy Court sustained Wade's other objections to the Plan not relevant to this appeal, and allowed the Debtors fifteen days to file an amended plan consistent with the Objection Order. *Id.* at 629 and 631. This appeal of the Objection Order followed.

After Wade filed his notice of appeal, the Bankruptcy Court entered an order (Confirmation Order) confirming the Debtors' amended chapter 13 plan (Amended Plan). The Amended Plan apparently cures arrearages over a sixty-month period, consistent with the Bankruptcy Court's Objection Order. Wade did not appeal the Confirmation Order. Neither the Confirmation Order nor the Amended Plan have been designated as part of the record on appeal.

## II. APPELLATE JURISDICTION

This Court, with the consent of the parties, has jurisdiction to hear appeals from "final

---

3. The trial court awarded attorney's fees in excess of those requested in Wade's Claim. We note the variation in the amount of attorney's fees in the Journal Entry of Judgment, the Claim, and the fifteen per cent finally awarded. This Court was not provided with a transcript of the proceeding, and the parties did not raise the reconciliation of these figures as an issue in this appeal.

4. This issue of whether the Bankruptcy Court improperly modified a final state court judgment has not been raised by the parties. *See Johnson v. Laing (In re Laing)*, 945 F.2d 354 (10th Cir. 1991) (bankruptcy court erred in modifying final Oklahoma state court judgment that formed the basis of proof of claim, based upon bankruptcy court's perception of the equities involved).

judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1). Upon leave of court, the Court also has jurisdiction to hear appeals from interlocutory orders. *Id.* at § 158(a)(3), (b)(1), and (c)(1).

■ The parties have consented to this Court's jurisdiction in that they have not opted to have the appeal heard by the United States District Court for the Eastern District of Oklahoma. *Id.* at § 158(c); 10th Cir. BAP L.R. 8001–1(a) and (e). The parties also apparently believe that the Objection Order is a final order in that Wade has not sought leave of Court to appeal, and the Debtors have not sought to dismiss the appeal for lack of jurisdiction or otherwise raised the issue of lack of jurisdiction. *See* 28 U.S.C. § 158(a)(3); Fed.R.Bankr.P. 8003 and 8011; 10th Cir. BAP L.R. 8011–1. Upon independent review of our jurisdiction over this appeal, we conclude that the first portion of the Bankruptcy Court's Objection Order disallowing Wade's claim for post-petition attorney's fees is a final order over which we have appellate jurisdiction; *see Farmers Home Admin. v. Buckner (In re Buckner)*, 66 F.3d 263, 265 (10th Cir.1995); *Adelman v. Fourth Nat'l Bank & Trust Co. (In re Durability, Inc.)*, 893 F.2d 264, 265 (10th Cir.1990) (per curiam); but for the reasons set forth below, the second portion of the Bankruptcy Court's Objection Order denying confirmation of the Debtors' Plan is not a final order over which we have appellate jurisdiction, and is not an interlocutory order over which we should exercise jurisdiction. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (federal appellate court must satisfy itself that it has jurisdiction over appeal even if conceded by the parties); *accord, City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1045 n. 8 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995); *Spears v. United States Trustee*, 26 F.3d 1023, 1024 (10th Cir.1994).

## III. STANDARD OF REVIEW

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo* ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988); *see* Fed.R.Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir.1996). Wade has not contested any of the Bankruptcy Court's findings of fact. Since the questions involved are purely legal, we review the Bankruptcy Court's Objection Order *de novo.*

## IV. DISCUSSION

*The Bankruptcy Court Did Not Err In Disallowing Wade's Claim For Post Petition Attorney's Fees*

Having collected the maximum fifteen per cent allowed under the Note once from Mrs. Hatcher's mother, and having the Claim allowed containing an additional fifteen per cent attorney's fee, Wade now seeks a legal theory under which he may collect additional post-petition fees. First, Wade argues that he has a fundamental bargained-for state law property right protected by the interpretation of § 1322(b)(2) set forth in *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Second, Wade asserts that § 506(c) cannot be used to deny him attorney's fees even though his claim is undersecured and the Note does not provide for additional attorney's fees. Finally, he asserts that if § 506(c) applies, he is nonetheless entitled to those post-petition attorney's fees pursuant to § 1325(a)(5)(B)(ii) in order to provide him the present value of his Claim.

■ We find Wade's assertion to the entitlement to post-petition attorney's fees without merit. Section 1322(b)(2) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . .

*Nobelman* held that § 1322(b)(2) prohibits the modification of the "rights" of a creditor secured by a debtor's primary residence, and that § 506(a) may not be used to bifurcate such a claim because bifurcation would, among other things, reduce the term of the note and require reamortization, thus significantly modifying the creditor's contractual rights. *Nobelman,* 508 U.S. at 328–32, 113 S.Ct. at 2109–12. Noting that the word "rights" is not defined in the Bankruptcy Code, the Supreme Court held that such rights were to be determined under state law and are "reflected in the relevant mortgage instruments, which are enforceable under [state] law." *Id.* at 329, 113 S.Ct. at 2110.

Wade repeatedly refers to his non-modifiable, bargained for, contractual rights protected under *Nobelman.* He fails, however, to identify where under either the Note or state law [5] he has a "right" to attorney's fees in addition to the fifteen per cent identified by the Bankruptcy Court in its uncontested findings of fact. In this case, § 1322(b)(2) and *Nobelman* do nothing to provide for Wade's post-petition attorney's fees. No "right" to fees is modified by the Plan contrary to *Nobelman.*[6]

■ The Bankruptcy Court also concluded that Wade's post-petition attorney's fees

could not be allowed under § 506(b). Section 506(b), which governs the treatment of secured claims, provides that:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Under § 506(b), therefore, secured creditors are entitled to post-petition attorney's fees provided that (i) the creditor is oversecured, (ii) the fees are reasonable, *and* (iii) the fees are provided for in the agreement between the parties. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *In re Williams,* 183 B.R. 895, 897 (D.Kan.1995).

Wade argues that § 506(b) does not apply in this case because § 1322(b)(2), as interpreted in *Nobelman,* preempts § 506(b), and thus it cannot be used to adversely modify the "rights" of a mortgagee. In *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993),[7] decided six days after *Nobelman,* the Supreme Court relied, in

5. Oklahoma law limits the allowance of attorney fees as follows:

> [W]ith respect to a consumer loan the agreement may provide for the payment by the debtor of reasonable attorney's fees not in excess of fifteen percent (15%) of the unpaid debt after default and referral to an attorney not a salaried employee of the lender. A provision in violation of this section is unenforceable.

Okla. Stat. Ann. tit. 14A, § 3–404 (West 1996).

6. Under *Nobelman,* it is arguable that a mortgagee's "rights" under a contract to collect attorney fees may not be modified under § 1322(b)(2). But, the Supreme Court limited its holding to the modification of "rights" by a debtor's plan, as opposed to modification by the Bankruptcy Code, stating that:

> This is not to say, of course, that the contractual rights of a home mortgage lender are unaffected by the mortgagor's Chapter 13 bankruptcy. The lender's power to enforce its rights—and, in particular, its right to foreclose on the property in the event of default—is checked by the Bankruptcy Code's automatic

stay provision. In addition, § 1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of the plan "notwithstanding" the exception in § 1322(b)(2). These statutory limitations on the lender's rights, however, are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition.

*Id.* at 330, 113 S.Ct. at 2110–11 (citations omitted) (footnote omitted).

7. Since *Rake* was decided, § 1322 has been amended to provide:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e). The purpose of this subsection was to overrule *Rake.* 140 Cong. Rec. H10,-770 (Oct. 4, 1994). However, this amendment does not apply in this case because it only applies to agreements entered into after October 22,

part, upon § 506(b) to enhance an oversecured mortgagee's position by granting post-petition interest on an arrearage where the underlying contract did not so provide.[8] *Rake* concluded that § 506(b) applies to mortgagees during the post-petition, pre-confirmation period. Based on the ruling in *Rake*, Wade's argument that § 1322(b)(2) operates to the exclusion of § 506(b) is not correct.[9] If § 506(b) applies to mortgagees despite § 1322(b)(2), Wade's post-petition attorney's fees are disallowed because they don't meet the third requirement of § 506(b) that the attorney's fees are provided for under the agreement from which the claim arose.[10]

■ Wade further contends that if § 506(b) applies, its application is limited because *Rake* requires allowance of his attorney's fees under § 1325(a)(5)(B)(ii), regardless of the terms of the Note or his undersecured status. Wade misunderstands *Rake*, which provides that secured creditors are guaranteed that property distributed under a plan on account of a secured claim must equal the present dollar value of the claim as of the confirmation date, and that the present value of such claim implies the payment of interest. *Id.* at 470–71, 113 S.Ct. at 2191–92. Wade appears to argue that in order to realize the present value of his secured Claim, the Claim must be sup-

plemented by the additional attorney's fees incurred related to the Plan Objection and the filing of Wade's Claim. *Rake* and § 1325(a)(5)(B)(ii) provide no basis for this court to expand the concept of present value to include non-contractual post-petition attorney's fees to an undersecured creditor. Also, the "amount of the allowed secured claim" in section 1325(a)(5)(B)(ii) "is determined in accordance with the provisions of sections 506(a) and (b)." 8 *Collier on Bankruptcy* ¶ 1325.06[3][b][iv] (Lawrence P. King ed., 15th ed. rev.1997). Any argument that *Rake* somehow allows Wade's attorney's fees regardless of the terms of an agreement is incorrect. As noted above, and as acknowledged by the Supreme Court in *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030, § 506(b) makes the allowance of post-petition attorney's fees totally dependent on the terms of the agreement between the parties.

### An Order Denying Confirmation of the Debtor's Plan is Not Appealable

Wade contends that the Bankruptcy Court erred in holding that the sixty-month period to cure the arrearages to his client was reasonable under § 1322(b)(5). Wade urges this Court to adopt a rule that any cure over a period longer than 36 months is *per se* unreasonable,[11] even though in this case the Bankruptcy Court supported its conclusion that

1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(b)(2)(D), 108 Stat. 4106, 4151 (1994).

**8.** In *Rake*, Wade requested post-petition attorney's fees not provided in the contract. *Id.* at 466, 113 S.Ct. at 2189. The Supreme Court's ruling made no further reference to or analysis regarding the ungranted request for attorney's fees. Likewise the Tenth Circuit did not specifically address the attorney's fee issue in the underlying case, *Wade v. Hannon*, 968 F.2d 1036 (10th Cir.1992), *aff'd, Rake*, 508 U.S. at 475, 113 S.Ct. at 2193, although the district court had affirmed the bankruptcy court's determination that § 506(b) and § 1325(a)(5) did not apply because of the provisions of § 1322(b).

**9.** Wade also cites *First Brandon Nat'l Bank v. Kerwin–White*, 109 B.R. 626 (D.Vt.1990); *Clark Screw Machine Prods. Co. v. Clark Grind and Polish, Inc. (In re Clark Grind & Polish, Inc.)*, 137 B.R. 172 (Bankr.W.D.Pa.1992); and *In re*

*Cipriano*, 8 B.R. 697 (Bankr.D.R.I.1981), for the proposition that the allowance of post-petition attorney's fees is dependant on the terms of the agreement, not § 506(b). Although the courts in all of these cases looked to the terms of the agreement to determine whether post-petition attorney's fees were allowable, they did so because they were compelled to do so *under § 506(b)*.

**10.** In this case the Bankruptcy Court concluded that because Wade was undersecured, he was not entitled to post-petition attorney's fees. Since under any reading of § 506(b) Wade's post-petition attorney's fees are disallowed, it is unnecessary to determine the issue of whether Wade's undersecured status alone requires disallowance.

**11.** Wade contends that "[t]he rule in the western district of Oklahoma (this writer's case) is that taking more than 36 months to effectuate a cure is *per se* unreasonable." In support of this proposition, Wade cites *In re Penick*, 108 B.R. 776, 780 (Bankr.W.D.Okla.1989). *Penick*, to the ex-

sixty months was reasonable with specific findings of fact that are not contested.

At the time Wade filed his notice of appeal from the Objection Order, it was not final as required by 28 U.S.C. § 158(a)(1). *Simons v. FDIC (In re Simons),* 908 F.2d 643 (10th Cir.1990) (per curiam) (denial of confirmation of plan is not a final order for purposes of appeal and is not appealable under the collateral order doctrine); *see Quackenbush v. Allstate Ins. Co.,* —— U.S. ——, ——, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996) ("[A] decision is ordinarily considered final and appealable under § 1291 [and § 158(a)] only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945))); *Buckner,* 66 F.3d at 265 (bankruptcy case citing same standard); *Durability, Inc.,* 893 F.2d at 265. While the Confirmation Order is a final order; *see Interwest Business Equip., Inc. v. United States Trustee (In re Interwest Business Equip., Inc.),* 23 F.3d 311, 315 (10th Cir.1994) ("An order confirming a plan of reorganization 'is as close to *the* final order as any the bankruptcy judge enters.'" (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351 (7th Cir.1990) (emphasis in original))); Wade did not appeal it, and neither that Confirmation Order nor the Amended Plan are part of the record in the present appeal. *See* Fed.R.Bankr.P. 8001(a) and 8002(a) (appeal taken by filing timely notice of appeal).

■ In concluding that we lack appellate jurisdiction, we have considered the rule established by the United States Court of Appeals for the Tenth Circuit in *Lewis v. B.F. Goodrich Co.,* 850 F.2d 641 (10th Cir.1988) (en banc), that a premature notice of appeal filed from a non-final judgment may ripen upon the entry of a subsequent final judgment, provided that the appellate court has not yet dismissed the appeal for lack of juris-

diction. *See Bohn v. Park City Group, Inc.,* 94 F.3d 1457 (10th Cir.1996) (applying *Lewis* rule). This rule has been held to be applicable to bankruptcy appeals. *Durability, Inc.,* 893 F.2d at 264; *see Spears,* 26 F.3d at 1023 (court recognized *Lewis,* but held it inapplicable to the facts of the case); *Interwest Business Equip.,* 23 F.3d at 315 (applying *Lewis* ).

We have considered whether the application of *Lewis* provides us with jurisdiction over this appeal because Wade's premature notice of appeal filed from the non-final Objection Order could be considered "ripened" upon the entry of the subsequent final Confirmation Order. *See Interwest Business Equip.,* 23 F.3d at 315 (court refused to consider whether order denying approval of employment of law firm was final because orders confirming respective plans of reorganization of debtors in possession entered after notice of appeal had been filed from employment order rendered that order final). Such analysis, however, does not take into account limitations on *Lewis* or the nature of the Objection Order, an order denying confirmation of a plan.

In *Nolan v. Department of Justice,* 973 F.2d 843 (10th Cir.1992), the Tenth Circuit made clear that while a notice of appeal may ripen upon the entry of a final order under *Lewis,* the notice of appeal can only apply to the previous non-final order, and cannot be considered a notice of appeal from the order rendering the non-final order final. *See Prows v. Federal Bureau of Prisons,* 981 F.2d 466, 467 n. 1 (10th Cir.1992) (applying rule in *Nolan* ). Although a subsequent order may ripen a notice of appeal of a non-final order, the notice only confers jurisdiction over those orders in existence at the time it was filed.

At the time Wade filed a notice of appeal from the Objection Order, the Confirmation Order did not exist. Thus, under *Nolan,* the

---

tent that it is even controlling in this case which arises out of the Eastern District of Oklahoma, does not in any way apply a *per se* rule. As the Bankruptcy Court noted, *Penick* determined that

a thirty-six month plan was not reasonable *in light of the facts of that case. Hatcher,* 202 B.R. at 630.

only order we can consider in this appeal is the Objection Order. *See* Fed.R.Bankr.P. 8001(a) and 8002(a) (appeal from a final order is taken by filing a timely notice of appeal). Review of the Objection Order is not possible because it has no independent aspects of finality, a standard that must apply under *Lewis.*

*Lewis,* and the cases which have applied its procedure, have involved orders which, at the time appealed were not final, because they did not resolve all claims within a case, but (1) subsequently became final when all claims were resolved, *or* (2) which could have been reviewed upon proper certification under Fed.R.Civ.P. 54(b),[12] which is made applicable in bankruptcy cases under Fed.R.Bankr.P. 7054, despite the lack of a resolution of all claims in the case. The Objection Order is not an order that resolves a discrete claim within a multiple claim or multiple party dispute, which is subsequently made final when all claims or claims against all parties are resolved. Further, the Objection Order would not have been an appropriate order for Rule 54(b) certification. The Tenth Circuit has held, in the context of a bankruptcy case, that Rule 54(b) "may only be

used to permit appeals from orders that finally resolve at least the discrete claim for which review is sought." *Spears,* 26 F.3d at 1025 (citing *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n. 1 (10th Cir.1991); *Strey v. Hunt Int'l Resources Corp.,* 696 F.2d 87, 88 (10th Cir.1982)).[13] The Objection Order did not finally resolve the discrete issue of the term of the Plan, because the Debtors could have modified the Plan term. *See Simons,* 908 F.2d at 645 (recognizing that order denying confirmation of a plan does not resolve a discrete issue). Since the Objection Order does not have independent aspects of finality, appellate review is not proper notwithstanding the subsequent entry of the final Confirmation Order.

Requiring orders considered under the *Lewis* procedure to bear some independent aspect of finality is in accord with the case and controversy requirement of Article III of the United States Constitution.[14] *See generally* 15 James Wm. Moore, *Moore's Federal Practice* § 101.05 (3d ed.1997) (case or controversy, which goes to the court's jurisdiction, must exist throughout appeal process). It is also in accord with rules of procedure which require a notice of appeal to apply only

---

**12.** Fed.R.Civ.P. 54 provides, in relevant part, that:

> (b) *Judgment Upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

*See* Fed.R.Bankr.P. 7054 and 9014 (making Fed. R.Civ.P. 54(b) applicable in adversary proceedings and contested matters).

**13.** In *Spears,* 26 F.3d at 1023, a trustee appealed a district court order affirming a bankruptcy court order authorizing the appointment of the trustee's law firm as counsel prospectively, and denying compensation for all services rendered by the firm prior to its appointment. The Tenth Circuit refused to reach the merits of the appeal, finding that it lacked appellate jurisdiction because the order authorizing employment was not a final order. In so doing, the court stated that the procedure set forth in *Lewis* to cure prema-

ture appeals through the use of Rule 54(b) certification was not applicable. Since the bankruptcy court's order left open the allowance of the firm's fees, the court stated that Rule 54(b) could not apply as there was not a final order in the case or "as to the particular matter appealed." *Id.* at 1025.

**14.** At the time Wade's notice of appeal was filed, the controversy related to the term of the Debtors' Plan was not ripe for review inasmuch as numerous events may have occurred which would have rendered the dispute moot. For example, the Debtors could have amended their Plan to deal with Wade's concerns, including the term of the Plan, or the Debtors' case could have been dismissed or converted to chapter 7. Of course we now know that the Bankruptcy Court entered the Confirmation Order. Since the Confirmation Order was not appealed, we can give no relief in this case and, therefore, our reversal or affirmance of the Objection Order would serve no purpose. *See generally* 15 James Wm. Moore, *Moore's Federal Practice,* at § 101.77 (to satisfy jurisdictional requirements "it is necessary that the Court be able to grant relief or fashion a remedy in a manner that would have a conclusive effect on the dispute").

to those orders specifically referred to therein, Fed.R.Bankr.P. 8001(a) and 8002(a), and the rule in *Nolan* that prevents us from using a notice of appeal from a non-final order to consider a final order that has not been appealed.

■■■ Finally, we note that the Objection Order is not an interlocutory order over which we will exercise jurisdiction under 28 U.S.C. § 158(a)(3).[15] We have stated that:

> Leave to hear appeals from interlocutory orders should be granted with discrimination and reserved for cases of exceptional circumstances. Appealable interlocutory orders must involve a controlling question of law as to which there is substantial ground for difference of opinion, and the immediate resolution of the order may materially advance the ultimate termination of the litigation.

*Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 769–70 (10th Cir. BAP 1997) (citing 28 U.S.C. § 1292(b); Fed. R.Bankr.P. 8018(b); *American Freight Sys., Inc. v. Transport Ins. Co. (In re American Freight Sys., Inc.)*, 194 B.R. 659, 661 (D.Kan. 1996); *Intercontinental Enter., Inc. v. Keller (In re Blinder Robinson & Co.)*, 132 B.R. 759, 764 (D.Colo.1991)). The Objection Order does not involve a controlling question of law as to which there is a substantial ground for difference of opinion. Moreover, because the Bankruptcy Court has confirmed the Debtors' Amended Plan, the resolution of the issues raised in the Objection Order will not materially advance the ultimate termination of the litigation.

Very simply, Wade appealed the wrong order. Accordingly, Wade is bound by the terms of the Amended Plan that was confirmed by the Bankruptcy Court because his time to appeal the Confirmation Order has lapsed.

### V. CONCLUSION

For the reasons stated above, we hereby AFFIRM that portion of the Bankruptcy Court's Objection Order disallowing Wade's request for post-petition attorney's fees, but decline to consider the portion of the Objection Order denying confirmation of the Debtors' Plan because we lack appellate jurisdiction.

---

**15.** Since Wade did not file a motion for leave to appeal in accordance with 28 U.S.C. § 158(a)(3) and Fed.R.Bankr.P. 8003(a), we will treat Wade's notice of appeal as such a motion under Fed.R.Bankr.P. 8003(c).