**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSHUA W., and ANITA O.,

      Plaintiff-Appellants,

v.

USD 259 BOARD OF EDUCATION,
Wichita Public Schools; LARRY
VAUGHN; USD 385 ANDOVER,
Board of Education; PATRICK
TERRY; PAM CLAPP; GARY
HARMON; REED HARRISON;
CARLY HAYNES; NANCY
KIRKENDOLL; NANCY LUSK;
RICH STENSON; ANDY
TOMPKINS, and KANSAS STATE
BOARD OF EDUCATION,

      Defendants-Appellees.

No. 98-3248
(D.C. No. 97-1042-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT**  *

---

Before **KELLY** , **HENRY** , and **MURPHY** , Circuit Judges.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

## I. Background

Plaintiffs Joshua W. and his mother Anita O. brought this action in 1997 under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1485, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796, and 42 U.S.C. § 1983, against defendants: the Andover Unified School District 385 (Andover USD), the individual members of the Andover USD's board of education and its superintendent, Terry Parker (Andover defendants); the Wichita Unified School District 259 (Wichita USD), individual members of the Wichita USD's board of education and its superintendent, Larry Vaughan (Wichita defendants); the Kansas Board of Education; and Dr. Andy Tompkins, the Commissioner of Education of Kansas. The district court dismissed the Andover defendants based on plaintiffs' failure to state a claim against them in their complaint. Thereafter, the district court granted summary judgment in favor of the Wichita defendants and Tompkins. The district court granted plaintiffs' request for Fed. R. Civ. P. 54(b) certification. We have

jurisdiction under 28 U.S.C. § 1291, and affirm both of the district court's decisions on review.

As an initial matter, we review briefly the IDEA and Kansas law as pertinent to disposition of this appeal. Under the IDEA, the federal government infuses states with funds "for the education of children with disabilities, guaranteeing disabled children between the ages of three and twenty-one access to a free, appropriate, public education (FAPE)." Erickson v. Albuquerque Pub. Sch., 199 F.3d 1116, 1118 (10th Cir. 1999). To receive federal funding, states must follow the IDEA's regulations, including identifying, locating, and evaluating "all children residing in the State who are disabled . . . and who are in need of special education and related services." 20 U.S.C. § 1412(2)(C). [1]

The IDEA defines a "free appropriate public education" as "special education and related services" that:

> (A) have been provided at public expense, under public supervision and direction, and without charge,
> (B) meet the standards of the State educational agency,
> (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

---

[1]     In 1997, Congress amended the IDEA significantly. See Erickson, 199 F.3d at 1118 n.1. (citing Pub. L. No. 105-17, 111 Stat. 37 (1997)). The time frame at issue here predates those amendments, which are not retroactive. See id. Accordingly, we quote and cite to the provisions of the IDEA in effect at that time. The substance of the provisions that are referenced in this order and judgment remain substantially the same as their counterparts in the IDEA's present form.

(D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(a)(18). The individualized education program (IEP) required by the IDEA is prepared during a meeting with the child's teacher, a special education professional, and the child's parent(s). See Erickson , 199 F.3d at 1118. Among other things, the IEP reflects the child's abilities, special education goals, and the particular services the child will receive in furtherance of those goals. See id. The IEP must be reviewed at least annually and revised as necessary to ensure an appropriate education. See 20 U.S.C. § 1414(a)(5).

Under Kansas law, residency with a parent who lives within the jurisdiction of the school district controls which school district is responsible for providing the free appropriate public education:

> School residence; definitions. (a) Any child who has attained the age of eligibility for school attendance may attend school in the district in which the child lives if (1) the child lives with a resident of the district and the resident is the parent, or a person acting as parent, of the child; or (2) subject to the provisions of subsection (c), the child lives in the district as a result of placement therein by a district court or by the secretary of social and rehabilitation services; or (3) the child is a homeless child.

Kan. Stat. Ann. § 72-1046(a). "[P]erson acting as parent" is defined, in relevant part, as follows:

> [A] person, other than a parent, who is liable by law to maintain, care for, or support the child, or who has actual care and control of the child and is contributing the major portion of the cost of support of the child, or who has actual care and control of the child with the

written consent of a person who has legal custody of the child, or who has been granted custody of the child by a court of competent jurisdiction.

Id. § 72-1046(d)(2)(B).

Joshua W. was born in May 1978, and has been eligible for special education services under the IDEA since 1985. His natural parents, Anita O. and Bruce W., divorced in 1980, and custody was awarded to Anita O. In 1988, Joshua W. moved in with his father and, although Anita O. has continued to support him financially, he has not lived with her since. Joshua W. has also lived with his adult sister. Throughout the years, Joshua W. has attended many different schools, some financed under the IDEA and some financed privately by Anita O. Joshua W.'s education history, as well as his whereabouts (including confinements as a juvenile offender), are set forth at length in the district court's orders on review and will not be reiterated herein.    See Appellant's App., Vol. I at 39-46; Appellant's App., Vol. IV at 863-78.

In November 1995, Anita O. asked the Wichita USD for a private residential special education placement for Joshua W. Her request was related to Joshua W.'s then-recent guilty plea in the District Court of Saline County, Kansas. The criminal charges that resulted in the plea arose from an altercation between Joshua W. and Anita O. while she was driving him to a military academy (he threatened her with a knife). Joshua W. plead guilty to aggravated assault in

September 1995 and was sentenced by the court on November 20, 1995. As part of Joshua W.'s sentence, the court ordered him to serve twenty-four months probation. Probation was conditioned on his entering and successfully completing Three Springs, a residential private facility located in Tennessee. Anita O.'s efforts to "enroll" Joshua W. in the Wichita USD took place at the same time she was actively seeking his placement in Three Springs in order to avoid his incarceration.

The Wichita USD denied Anita O.'s request for private residential placement. Despite the denial, she placed Joshua W. in Three Springs. Although the Wichita USD had prepared an IEP for Joshua W., which was in effect from November 1994 to November 1995, it was not able to prepare an IEP for Joshua W. for the following year in conjunction with Anita O.'s request for residential placement. Essentially, Anita O.'s unilateral placement obstructed the IEP process. Moreover, she failed to inform the Wichita USD of the circumstances underlying her request for the placement.

Anita O. then pursued administrative remedies available under the IDEA by requesting an impartial due process hearing,     see 20 U.S.C. § 1415(b)(2), and unsuccessfully sought that the Andover USD be joined as a party to that hearing. An evidentiary hearing was held on October 4, 1996. The limited issue before the hearing officer was whether the Wichita USD was responsible for Joshua W.'s

special education.  The hearing officer found that Joshua W. was not a resident of the Wichita USD in November 1995 under applicable Kansas law.          See Appellant's App., Vol. I at 156-58.  Specifically, the hearing officer found that Joshua W. ceased to be a resident of the Wichita USD when his father--the resident parent--moved out of that district.     [2] See id at 157.  On plaintiffs' appeal, a due process reviewing officer affirmed the hearing officer's decision.          See id. at 159-63.

Despite plaintiffs' attack on the appropriateness and adequacy of Joshua W.'s entire special education experience, the focus of this litigation is limited to whether either the Andover or Wichita USD is responsible for paying for Joshua W.'s residential private placement commencing in November 1995. On appeal, plaintiffs contend that the district court erred by:  (1) dismissing the Andover USD because it is a necessary/indispensable party; (2) dismissing the "alternative" IDEA claims against the Andover defendants; (3) granting summary judgment to the Wichita defendants; (4) dismissing the Rehabilitation Act and § 1983 claims arising out of the Wichita USD's purported violation of the IDEA; (5) granting summary judgment to Tompkins; and (6) dismissing the Kansas State Board of Education for failing to serve process under Fed. R. Civ. P. 4(m).

---

[2]     Anita O. moved out of the Wichita USD and into the Andover USD in March 1995.   See Appellant's App., Vol. I at 157.

## II. The Andover Defendants

We turn first to the district court's decision dismissing the Andover defendants on a motion to dismiss. We review de novo the sufficiency of a complaint and the district court's grant of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). In doing so, we apply the same standards applied by the district court. See David v. City & County of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996). Specifically, we accept as true all the well-pleaded factual allegations in the complaint as viewed in the light most favorable to the nonmoving party. See GFF, 130 F.3d at 1384. Moreover, "[a] 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quotation omitted). Accordingly, we assess the limited question "whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).

Plaintiffs acknowledge that they failed to raise the issue of indispensable party below in defending against the Andover defendants' motion to dismiss, but argue that we should consider it nevertheless because we have an independent duty and should exercise our jurisdiction to do so. Essentially, plaintiffs argue that, without the Andover USD, it will be impossible to ascertain which school

district is responsible for providing Joshua W. with special education and special services. Plaintiffs argue that, although by their own admission Joshua W. never resided in the Andover USD, the Wichita USD adopted the position that he did. Last, plaintiffs argue that the district court improperly based the dismissal on paragraph three of the complaint (which states that Joshua W. never resided in the Andover school district), and should have, under Fed. R. Civ. P. 8(e)(2), allowed the claims against all the Andover defendants to proceed.

Plaintiffs' attempt to argue joinder of a necessary/indispensable party under Fed. R. Civ. P. 19 obfuscates the real issue, i.e., whether the district court properly dismissed the Andover USD for plaintiffs' failure to state a claim in their complaint. Even if we were persuaded of Rule 19's applicability, and our "duty" to consider the issue of a necessary party on appeal in these circumstances, we would conclude that the Andover USD is neither a necessary nor indispensable party for purposes of that rule. See Fed. R. Civ. P. 19 (setting out factors to be considered in relevant analyses).

Based on our review of the complaint under the standards set forth above, we conclude as did the district court. Plaintiffs' complaint states that Joshua W. "has resided all his life in the Kansas school district of Wichita U.S.D. 259."

Appellant's App., Vol. I at 21, para. 3 (complaint);   [3] see also id. at 23, para. 18

("Since 1988, Joshua W. lived in Wichita with various family members, including

his father or adult sister but never with his mother.").  Under the applicable

Kansas law quoted above, Joshua W.'s residency controls.  Plaintiffs have failed

to plead any residency in the Andover USD.  Neither are we persuaded by

plaintiffs' contentions on appeal of "alternative" claims against the Andover

defendants, in which plaintiffs essentially argue that:  (1) the Wichita USD took

the position that the Andover USD was responsible for Joshua W.'s special

education needs; and (2) if Wichita is not responsible for meeting Joshua W.'s

special education needs, the Andover USD had to be the responsible district.

Although plaintiffs characterize this an alternative pleading permitted under

Fed. R. Civ. P. 8(e)(2)--which condones inconsistent claims and defenses--that

rule does not apply to this situation.

---

[3]     After the district court entered its order dismissing the Andover defendants, plaintiffs amended their complaint.  The amended complaint still contains the same statement.   See Appellant's App., Vol. II at 271, para. 3 (amended complaint).

## III. The Wichita Defendants and Tompkins

Next, we review the district court's grant of summary judgment to the Wichita defendants and Tompkins. Generally, summary judgment is appropriately granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> In reviewing a challenge under the IDEA, the district court engages in a modified de novo review, in which it must independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below.

Erickson, 199 F.3d at 1120 (quotation omitted). We review the district court's decision granting summary judgment de novo, applying the same standards as that court. See id.

The district court found that:

> Based upon the facts presented to the court, it would appear that Joshua was not entitled to educational services from the [Wichita USD] since he was neither living in or physically present in the district in November 1995, and was not living with a parent or person acting as a parent in the [Wichita USD]. Both Joshua's parents had moved out of the [Wichita USD]. Although plaintiffs assert that at some time Joshua continued to live in Wichita with his slightly older sister, the sister does not constitute a "person acting as parent" within the meaning of state law given the state of this record. Anita O. has directly acknowledged that she continued throughout this period to act to support Joshua and to make decisions regarding his control and education.

-11-

Appellant's App., Vol. IV at 873. The court concluded that "the uncontroverted facts establish that, by the time of the attempt, or, more accurately, the pretended attempt to enroll Joshua W. in November 1995, he cannot be considered a resident of the Wichita school district." Id. at 873-74 (footnote omitted).

Next, the court specifically found the evidentiary record before it supported the conclusion that "Anita O.'s actions were not prompted by a sincere effort to obtain a final decision from the [Wichita USD] regarding placement, but were simply seeking to manipulate the District into funding a placement upon which she had already resolved." Id. at 875 (footnote omitted). Because plaintiffs' Rehabilitation Act and § 1983 claims were based on the purported IDEA violation, the district court concluded that the individual Wichita defendants were qualifiedly immune. See id. at 876. Last, the district court found Tompkins also qualifiedly immune. See id. at 878.

A review of the record confirms the district court's residency determination as well as its conclusions that Anita O.'s action in unilaterally placing Joshua W. in Three Springs was manipulative, was not undertaken for education purposes, and essentially obstructed the IDEA process. See Wise v. Ohio Dep't of Educ., 80 F.3d 177, 184-85 (6th Cir. 1996) (holding parents bear financial risk that unilateral private placement--without consent of school officials and effort to change placement through IDEA process--will not be reimbursed). Plaintiffs'

-12-

arguments contra do not persuade us otherwise.    [4]  We agree with the district court, that, given these conclusions, there is no violation of constitutional and/or federal law, and plaintiffs' additional, undeveloped claims under the Rehabilitation Act and § 1983 fail, as do their claims against Tompkins.

## IV.  Kansas Board of Education

In this last issue, plaintiffs argue that the district court improperly dismissed the Kansas Board of Education under Fed. R. Civ. P. 4(m).  We lack appellate jurisdiction to consider this issue.  Specifically, the district court order from which plaintiffs seek relief was entered on November 10, 1998, approximately two months after their September 9, 1998 notice of appeal.  The notice of appeal references only the two district court orders reviewed above. Plaintiffs must separately appeal the November 10, 1998 order and comply with the jurisdictional requirements of Fed. R. App. P. 3.       See Nolan v. United States Dep't of Justice  , 973 F.2d 843, 846 (10th Cir. 1992) ("[A]ny subsequent appeals [after notice of appeal filed] must separately and individually comply with the Rules of Appellate Procedure.").  For this reason, we also deny plaintiffs' motion

---

[4]      In brief, plaintiffs argue that:  while Joshua W. was not physically present in the Wichita USD, he continued to reside there; Joshua W.'s sister was acting as his parent; and Anita O.'s unilateral placement should not preclude reimbursement.

-13-

for leave to amend their appeal to include all adverse district court orders through April 26, 1999 in lieu of filing separate appeals.

## V.  Conclusion

The judgments of the district court are AFFIRMED (orders dated June 19, 1997, and August 7, 1997), the plaintiffs' motion to amend their appeal to include all adverse district orders entered through April 26, 1999 is DENIED.

Entered for the Court

Robert H. Henry
Circuit Judge